JAMES A. PALMER, E. ALAN BISANER, P. N. DEVERE, KENNETH L. QUIGGINS and HENRY B. DAY, Comprising the NORTH CAROLINA STATE BOARD OF EXAMINERS IN OPTOMETRY, v. H. M. SMITH.

(Filed 15 December, 1948.)

**1. Physicians and Surgeons and Allied Professions § 1—**

Mere statutory declarations that certain acts constitute the practice of optometry is ineffectual when such acts do not constitute the practice of optometry within the statutory definition thereof.

**2. Constitutional Law § 12—**

Legislative declaration cannot convert a private business into a public one, and the police power cannot be extended to create a monopoly or special privilege when the restrictions have no real or substantial relation to the public health, safety or welfare.

**3. Same: Physicians and Surgeons and Allied Professions § 1—**

G.S. 90-115 proscribing a person not a licensed optometrist from replacing or duplicating an ophthalmic lens or replacing or duplicating the frame or mounting for such lens, is unconstitutional, since the acts proscribed do not constitute the practice of optometry as defined by G.S. 90-114, and the proscription has no reasonable relation to the public health, safety or welfare.

**4. Constitutional Law § 10b—**

The duty of the courts to declare a statute void when it contravenes the organic law is essential to orderly government under our constitutional system.

APPEAL by plaintiffs from *Harris, J.,* at February Term, 1948, of WAKE.

PALMER v. SMITH.

This is a civil action instituted in the Superior Court of Wake County, for the purpose of enjoining the defendant from the illegal practice of optometry in violation of the provisions of Chapter 90 of the General Statutes of North Carolina, relating to the practice of optometry.

The defendant was enjoined 17 October, 1947, until the further order of the court from engaging in the practice of optometry within the State of North Carolina, by employing any means for the measurement of the powers of vision and the adaptation of lenses for the aid thereof, and from duplicating or attempting to duplicate any lens for ophthalmic use without a written prescription from a person authorized under the laws of North Carolina to practice optometry or medicine.

When this cause came on for hearing, trial by jury was expressly waived by all parties, and it was agreed that the trial judge should hear the evidence, find the facts, draw his conclusions of law and enter judgment accordingly.

The court found as a fact that this action was instituted by plaintiffs under and by virtue of the provisions of Chapter 90 of the General Statutes of North Carolina, and that the defendant has heretofore endeavored to take the measurements of the powers of vision of certain individuals and has given directions and advice as to the fitness of spectacles, eyeglasses or lenses for the correction of vision of such individuals.

The court further found as a fact that the defendant has engaged in selling, furnishing, replacing or duplicating, or attempting to sell, replace or duplicate lenses, frames and/or mountings without a written prescription from a person authorized under the laws of the State of North Carolina to practice optometry or medicine, and that the defendant has not been issued a license to practice optometry in the State of North Carolina.

Upon these facts, the court being of the opinion that the defendant, in endeavoring to take the measurements of the powers of vision and prescribe spectacles, glasses or lenses for certain individuals has engaged in the practice of optometry as defined in Section 90-114 of the General Statutes of North Carolina and should be restrained from such practices in the future; and being of the further opinion that that portion of Section 90-115 of the General Statutes of North Carolina, which reads: "Within the meaning of this Article, a person shall be deemed as practicing optometry who does, or attempts to, sell, furnish, replace, or duplicate, a lens, frame, or mounting, or furnishes any kind of material or apparatus for ophthalmic use, without a written prescription from a person authorized under the laws of the State of North Carolina to practice optometry, or from a person authorized under the laws of North Carolina to practice medicine," is unconstitutional as being in contravention of the Fourteenth Amendment, Section 1, of the Constitution of the

United States, and as being in contravention of Article I, Sections 1, 17 and 31 of the Constitution of the State of North Carolina, and is, therefore, invalid and unenforceable; and entered judgment accordingly. The plaintiffs appeal and assign error.

    *Arch T. Allen, Drury B. Thompson, and Oscar G. Barker for plaintiffs. Robert H. Dye and Bailey & Holding for defendant.*

DENNY, J. The sole question for determination on this appeal is whether or not an optical mechanic is practicing optometry when he replaces or duplicates an ophthalmic lens, or replaces or duplicates the frame or mounting for such lens. No other mechanical work of the optician is prohibited by this section (G.S. 90-115), for the statute expressly provides: "The provisions of this section shall not prohibit persons or corporations from selling completely assembled spectacles, without advice or aid as to the selection thereof, as merchandise from permanently located or established places of business, nor shall it prohibit persons or corporations from making mechanical repairs to frames for spectacles; nor shall it prohibit any person, firm or corporation engaged in grinding lenses and filling prescriptions from replacing or duplicating lenses on original prescriptions issued by a duly licensed optometrist, and oculist."

The defendant does not challenge the power of the Legislature to regulate the practice of optometry as defined in Section 90-114 of the General Statutes of North Carolina, and therefore, he did not appeal from the judgment below, which restrained him from such practice.

It will be noted the State of North Carolina exercises no legislative or regulatory control over opticians, other than to require the payment of an annual privilege tax. The plaintiffs insist, however, that the duplication of an ophthalmic lens or the duplication or replacement of a frame or mounting for such lenses, constitutes the practice of optometry, and is not a mere mechanical operation or process which an optician has the right to perform.

G.S. 90-114 defines the practice of optometry as "the employment of any means, other than the use of drugs, medicine, or surgery, for the measurement of the powers of vision and the adaptation of lenses for the aid thereof." This definition is in substantial accord with those given in other jurisdictions. Words & Phrases, Per. Ed., Vol. 30, p. 31; *Martin v. Baldy,* 249 Pa. 253, 94 A. 1091; *Sage-Allen Co. v. Wheeler,* 119 Conn. 667, 179 A. 195, 98 A. L. R. 897; *McNaughton v. Johnson,* 242 U. S. 344, 61 L. Ed. 352. See Annotations 98 A. L. R. 905, for additional authorities.

"An 'optician' is not a licensed practitioner, but is one who makes eyeglasses and lenses and fills prescriptions of the oculist or optometrist, much in the same manner as the druggist carries out the direction or prescription of the physician. *Stern v. Flynn,* 278 N. Y. S. 598, 154 Misc. 609." Words & Phrases, Per. Ed., Vol. 29, p. 608.

The mere fact that a statute provides that a person shall be deemed as practicing optometry if he duplicates a lens or replaces or duplicates a frame or mounting, without a prescription, does not make it so, unless such duplication or replacement constitutes the practice of optometry within the statutory definition thereof. *S. v. Harris,* 216 N. C. 746, 6 S. E. (2) 854, 128 A. L. R. 658; *State v. McGrail,* 117 W. Va. 51, 183 S. E. 686; *State Ex Rel. Booth v. Beck Jewelry Enterprises,* 220 Ind. 276, 41 N. E. (2) 622, 141 A. L. R. 876. "Private business may not be regulated or converted into public business by legislative fiat." 11 Am. Jur., p. 1060, sec. 294. Moreover, the exercise of the police power will not be upheld where its use tends only to create a monopoly or special privilege and does not tend to preserve the public health, safety or welfare. *S. v. Lockey,* 198 N. C. 551, 152 S. E. 693; *Georgia State Board of Examiners in Optometry v. Friedmans' Jewelers, Inc.,* 183 Ga. 669, 189 S. E. 238; *People v. Griffith,* 280 Ill. 18, 117 N. E. 195; *Liggett Co. v. Baldridge,* 278 U. S. 105, 75 L. Ed. 204.

It is undisputed on the record that a qualified optician can take a whole or broken lens and by the use of a vertometer or lensometer, duplicate such lens with accuracy and exactness. The process of duplication is conceded to be a purely mechanical one. And according to the plaintiffs' evidence, only in about fifteen per cent of the cases do the prescriptions of optometrists or oculists contain any reference to the type or kind of frame or mounting that is to be used, or how the lenses are to be placed in the frame or mounting. Except where the patient has "a muscular unbalance," it seems the selection of the frame or mounting is left to the optician or the patient, and the manner in which the lens is set in the frame or mounting is left altogether to the optician. Several optometrists and oculists testified in the hearing below, that they always require a recheck of glasses prescribed for their patients to ascertain whether or not the optician filled the prescription accurately. However, it seems to be the more general practice, according to the record, for the optician to make the glasses according to the prescription, fit them to the wearer's face and deliver them to the patient, most of whom never return to the optometrist or the oculist for a re-check. The patient in such cases merely assumes the responsibility for error, if there be any, in the filling of the prescription. He does no more than this when he has a qualified optician to duplicate a lens or replace or duplicate a frame or mounting without a prescription.

Furthermore, it seems to be the usual practice in cases where a lens is broken, if the glasses had been satisfactory to the patient, and the patient seeks the advice of an optometrist or oculist, for the optometrist or oculist to take the broken lens and request the optician to duplicate it. Ordinarily no other instruction is given. The evidence further supports the view that there is no more likelihood of error in duplicating a lens or duplicating a frame or replacing one, than there is in filling an original prescription. Consequently, for all practical purposes, this case comes down to this: Shall an optician be permitted to duplicate an ophthalmic lens or place such lens in a new frame or mounting without a prescription or request from an optometrist duly authorized to practice optometry in North Carolina, or from a person authorized to practice medicine in this State?

We do not think the duplication of an ophthalmic lens or the duplication or replacement of a frame or mounting for such lenses, constitutes the practice of optometry as defined in G.S. 90-114. And what was said in *S. v. Harris, supra,* applies with equal force to the factual situation here. There the Court said: "Obedience to the Constitution on the part of the Legislature is no more necessary to orderly government than the exercise of the power of the Court in requiring it when the Legislature inadvertently exceeds its limitations. 'It has been frequently stated, in cases where the questions are presented for judicial review, that in order to sustain legislation under the police power, the courts must be able to see that its operation tends to some degree to prevent some offense or evil or to preserve public health, morals, safety, and welfare, and that if a statute discloses no such purpose, has no real or substantial relation to these objects, or is a palpable invasion of rights secured by fundamental law, it is the duty of the courts so to adjudge and thereby give effect to the Constitution.' 11 Am. Jur., p. 1087, sec. 306. In such a situation the duty of the Court is clear."

It must be conceded that the statute under consideration was intended to regulate the practice of optometry, and not the optical trade. And so long as the optician confines his work to the mere mechanical process of duplicating lenses, replacing or duplicating frames and mountings, "making mechanical repairs to frames for spectacles," filling prescriptions issued by a duly licensed optometrist or oculist, and does not in any manner undertake "the measurement of the powers of vision and the adaptation of lenses for the aid thereof," he is not practicing optometry.

The judgment of the court below will be upheld.

Affirmed.