STATE OF NORTH CAROLINA v. WILLIAM FRANK McCLEARY

No. 8227SC1115

(Filed 6 December 1983)

1. **Gambling § 3; Statutes § 4.2— lottery statutes—error to dismiss warrants against defendant—question of whether valid and invalid parts of statute are separable not reached**

   In prosecutions for advertising a lottery and dealing in a lottery, the trial court erred in dismissing the warrants against defendant even if its determination that G.S. 14-292.1 is unconstitutional was correct since the statutory provisions are clearly separable in purpose, and it is safe to assume that the legislature would have retained the general gambling or lottery prohibitions as operative in the event that the charitable exemption was judicially determined to be unconstitutional. G.S. 14-292.1, G.S. 14-289 and G.S. 14-290.

2. **Constitutional Law § 23.4; Gambling § 3— lottery—differentiation between commercialized gambling and lotteries by religious and charitable organizations**

   The legislature could reasonably determine that commercialized gambling for profit is typically conducted in such a manner as to threaten the public order and morals, and seek to suppress it, while allowing religious and charitable organizations to conduct bingo games and raffles without violating the due process rights of individuals such as those of defendant who was charged with advertising a lottery in violation of G.S. 14-289 and dealing in a lottery in violation of G.S. 14-290.

3. **Constitutional Law § 20.1; Gambling § 3— certain provisions of gambling laws unconstitutional**

   The statutory provision permitting homeowner or property owner associations to conduct bingo games or raffles bears no rational relation to the

purposes of the gambling prohibition or the charitable exemption, and had the effect of treating similarly situated persons and groups differently, without a rational basis for such differential treatment thereby making it inconsistent with the constitutional guaranty of equal protection contained in Art. I, § 19 of the North Carolina Constitution. Furthermore, the portion of G.S. 14-292.1(d) requiring the exempt organization facilities financed by bingo or raffle proceeds to be made available for use by the general public "from time to time" is simply insufficient to prevent the grant of this special gambling privilege from violating the Exclusive Emoluments Clause of the North Carolina Constitution. Art. I, § 32 of the North Carolina Constitution.

　　　Judge PHILLIPS dissenting.

APPEAL by the State from *Smith, Special Judge.* Order entered 28 July 1982 in Superior Court, GASTON County. Heard in the Court of Appeals 13 April 1983.

Defendant, William Frank McCleary, was charged in separate warrants with the offenses of advertising a lottery, G.S. 14-289, and dealing in a lottery, G.S. 14-290. Defendant was convicted of both offenses in Gaston County District Court on 16 April 1982. Defendant appealed his conviction to Superior Court, where he moved for dismissal of the charges against him. On hearing the motion, the court dismissed the warrants containing the charges and declared that G.S. 14-292.1 was unconstitutional on equal protection and due process grounds because it arbitrarily allowed certain classes of citizens to engage in the activities for which defendant has been arrested. The State appealed the dismissal.

*Attorney General Rufus L. Edmisten, by Jo Ann Sanford, Special Deputy Attorney General, and Steven F. Bryant, Assistant Attorney General, for the State.*

*Gingles and Hamrick, by Ralph C. Gingles, for defendant appellee.*

JOHNSON, Judge.

This appeal involves a constitutional challenge to the statutory scheme embodied in G.S. Chapter 14, Article 37, regulating lotteries and gambling, and exempting certain types of organizations from the general prohibitions against these activities. The constitutionality of this exemption presents a question of first impression under Article 37. While the prohibition against dealing in a lottery contained in G.S. 14-290 dates back to

the early nineteenth century, the exemption for the organizations listed in G.S. 14-292.1 is of recent origin, dating back only to 1979. *See* Session Laws, 1979, c. 893, s. 2.[1] For the reasons set forth more fully below, we conclude that the provisions of G.S. 14-292.1, with one exception, do not violate the constitutional guarantees of due process and equal protection, and that the trial court erred in dismissing the warrants against defendant pursuant to G.S. 14-289 and G.S. 14-290.

G.S. 14-289, which prohibits the advertising of lotteries, contains an exception that excludes from its terms lawful raffles conducted pursuant to G.S. 14-292.1. G.S. 14-290, which prohibits dealing in lotteries, contains identical language. G.S. 14-292.1 allows certain exempt organizations to hold, and individuals to participate in, raffles or bingo games so long as they are conducted according to its terms. The definition of an "exempt organization" in subsection (b)(1) contains the following requirements:

1. The organization has been in continuous existence in the county of operation of the raffle or bingo game for at least one year, AND

2. The organization is exempt from taxation under

A. Sections 501(c)(3), 501(c)(4), 501(c)(8), 501(c)(10), 501(c)(19), or 501(d) of the Internal Revenue Code OR

B. Is exempt under similar provisions of North Carolina General Statutes [G.S. 105-130.11] as a bona fide nonprofit charitable, civic, religious, fraternal, patriotic or veterans' organization or as a nonprofit volunteer fire department, or as a nonprofit volunteer rescue squad or a bona fide homeowners' or property owners' association. (If the organization has local branches or chapters, the term "exempt organization" means the local branch or chapter operating the raffle or bingo game.) (Spacing and letters added.)

1. In the 1983 Session of the General Assembly of North Carolina a bill entitled "An Act to Clarify, Restrict and Amend the Law Relating to the Operation of Bingo Games and Raffles" was passed into law. Effective 1 October 1983, the new law repeals G.S. 14-292.1 and replaces it with "Part 2" of Article 14. For purposes material to this appeal, the clarified statute represents no substantial change in the law.

The remainder of G.S. 14-292.1 contains detailed provisions regulating the manner in which lawful bingo games and raffles must be conducted. Subsection (b)(3) defines "raffle" as a lottery in which the prize is won by random drawing of a name or number of a person purchasing chances. Subsection (c) provides that the exempt organization must display a "determination letter" from the Internal Revenue Service or the North Carolina Department of Revenue "that indicates that the organization is an exempt organization."[2]

Subsection (d) details the uses for which exempt organizations may expend the bingo or raffle proceeds. "Authorized expenditures" include expenses incurred in the operation of the bingo games or raffles. Subsection (d) states further that all proceeds remaining after the authorized expenditures shall inure to the exempt organization to be used in either of two basic ways:

(1) For religious, charitable, civic, scientific, testing for public safety, literary, or educational purposes, OR

(2) For purchasing, constructing, maintaining, operating or using equipment or land or a building or improvements thereto owned by and for the exempt organization and used for civic purposes or made available by the exempt organization for use by the general public from time to time or to foster amateur sports competition or for the prevention of cruelty to children or animals, provided that no proceeds shall be used or expended for social functions for the members of the exempt organization.

The State presented no evidence during the hearing conducted in Superior Court on the defendant's motion to dismiss the charges. The only facts of record concerning defendant are contained in the allegations in the two warrants. They are as follows: On or between 21 September and 12 October 1981, defendant McCleary published an account of a lottery by means of a printed circular and an advertisement in a local Gaston County newspap-

2. Under the 1983 amendment to Article 37, a specific licensing procedure is established. G.S. 14-309.5 provides that it shall be a Class H felony for any person to operate a raffle or bingo game without a license. G.S. 14-309.7(a) provides that any exempt organization desiring to obtain a license to operate bingo games or raffles shall make application to the Department of Revenue.

er stating how, when and where the lottery was to be drawn. The contest was to be for a three bedroom brick home with fireplace, central air, oil heat, and two full baths. Entry into the contest required a "donation" in the amount of $25.00, to be made to "McCleary Enterprises," Rt. 2, Box 343, Bessemer City, N.C. The contest would end at 12 midnight on 28 February 1982, with the drawing to be held on 10 March 1982 at 10:00 a.m., on the prize house premises located off I-85 and 29, less than one mile from the Kings Mountain city limits in Gaston County. The foregoing activity was alleged to violate G.S. 14-289. The second warrant alleged that on or about 21 September 1981, defendant opened, carried on and promoted, publicly and privately, a lottery, and by advertisement attempted to sell a house by means of a lottery, the contest winner to receive a three bedroom brick home in return for a $25.00 donation, in violation of G.S. 14-290. The defendant was arrested on 17 November 1981 and subsequently convicted of these offenses in the District Court.

The charges against defendant were dismissed by the Superior Court judge on the grounds that "to prosecute this defendant while not prosecuting those persons, groups or classifications exempted in [G.S.] 14-292.1 would in effect amount to a denial of due process and equal protection in violation of Article I, Section 19 of the Constitution of North Carolina and the Fifth and Fourteenth Amendments to the Constitution of the United States." The court ordered the warrants against the defendant dismissed, and declared G.S. 14-292.1 unconstitutional. On appeal, the State contends that General Statutes 14-289, 14-290, and 14-292.1 do not violate either the due process or equal protection provisions of the state and federal constitutions.

[1] Prior to our discussion of the merits of the State's appeal, we note that even if the trial court were correct in its determination that G.S. 14-292.1 was unconstitutional, it would have been error to dismiss the warrants against defendant. It is a general rule of statutory construction that whether the valid and invalid parts of a statute are separable is a question of legislative intent, and when unconstitutional excepting provisions can be removed without altering the basic prohibitions of the statute, they alone may be voided, leaving the general prohibition intact. *See U.T. Inc. v. Brown*, 457 F. Supp. 163, 170 (W.D.N.C. 1978). *See generally* 82 C.J.S., Statutes, § 93 c. The valid part of a statute will be sus-

tained if the valid and invalid parts are not so intimately con-
nected or interdependent as to raise the presumption that the
legislature would not have enacted the one without the other. *Id.*
at p. 156.

G.S. 14-292.1 constitutes a distinct exception to the general
and long standing prohibitions of G.S. 14-289 and G.S. 14-290. The
statutory provisions are clearly separable in purpose, and we find
it safe to assume that legislature would have retained the general
gambling or lottery prohibitions as operative in the event that
the charitable, exemption was judicially determined to be un-
constitutional. Indeed, G.S. 14-292.1 contains a severability clause
as to any invalid provision within the exemption itself. Session
Laws 1979, c. 893, s. 8. We also note that the recently clarified
statutes regulating bingo games and raffles contain a provision
automatically repealing G.S. 14-292.1 and the new "Part 2" of G.S.
Chap. 14, Article 37 in the event that it is judicially determined
"that the General Assembly may not constitutionally allow 'ex-
empt organizations' as defined herein to conduct bingo or raffles,
while denying that privilege to all other persons." Session Laws
1983, c. 896, s. 5.1. It was unreasonable to assume, as the trial
court evidently did, that the legislature intended to allow *all
citizens* to conduct lotteries if it were determined that the
charitable exemption as a whole was invalid on due process and
equal protection grounds. Thus, in any event, dismissal of the
warrants against defendant was error.

## DUE PROCESS

[2] The State submits that the statutes in question do not
violate the defendant's due process rights because the gambling
exemption is "a reasonable regulation under the police power in
that it sought to promote religious and other charitable purposes
by allowing such organizations to raise revenues through raffles
and bingo games." The defendant asserts that "the State has
unreasonably obstructed his right to earn a livelihood by only
permitting certain exempt organizations to engage in the conduct
of operating raffles and bingo games." Further, that "raffles and
bingo games are not inherently deleterious to the health, morals,
safety and general welfare of society, and that the denial of de-
fendant's right to engage in these activities is an invalid exercise
of the State's police power." In addition, defendant argues that

the denial of his right to conduct a raffle or lottery is "wholly irrelevant to the achievement of the State's objective" and is therefore unreasonable and arbitrary.

The Fifth and Fourteenth Amendments to the United States Constitution, together with the Law of the Land Clause of Article I, § 19 of the North Carolina Constitution, provide that no person shall be deprived of life, liberty or property without due process of law. These provisions, however, do not have the effect of overriding the power of state and local governments to establish all regulations that are reasonably necessary to secure the health, safety, good order, comfort or general welfare of the community. *Assoc. of Licensed Detectives v. Morgan, Attorney General,* 17 N.C. App. 701, 195 S.E. 2d 357 (1973). An exertion of the police power inevitably results in a limitation of personal liberty and legislation in this field is justified only on the theory that the social interest is paramount. *State v. Ballance,* 229 N.C. 764, 51 S.E. 2d 731 (1949). Whether it is a violation of the Law of the Land Clause (Article I, § 19) or a valid exercise of the police power is a question of degree and of reasonableness in relation to the public good likely to result from it. *In re Hospital,* 282 N.C. 542, 193 S.E. 2d 729 (1973); *Assoc. of Licensed Detectives v. Morgan, Attorney General, supra.*

In *State v. Ballance, supra,* the Supreme Court stated that the constitutional guaranty of liberty embraces the "right of the citizen to be free to use his faculties in all lawful ways; to live and work where he will; to earn his livelihood by any lawful calling; to pursue any livelihood or vocation. . . ." 229 N.C. at 769, 51 S.E. 2d at 734. The right to work and earn a livelihood has also been recognized as a property right that cannot be taken away except under the police power of the State in the paramount public interest in *Roller v. Allen,* 245 N.C. 516, 96 S.E. 2d 851 (1957). The rule is that a statute or ordinance which curtails the right of any person to engage in any occupation can be sustained as a valid exercise of the police power only if it is reasonably necessary to promote the public health, morals, order, safety or general welfare. *Cheek v. City of Charlotte,* 273 N.C. 293, 160 S.E. 2d 18 (1968). The statute must have a rational, real, or substantial relation to the legitimate governmental purpose and must be reasonably necessary to promote the accomplishment of a public good, or prevent the infliction of a public harm. *State v. Ballance,*

State v. McCleary

*supra.* "The legislature may not, under the guise of protecting the public interests, arbitrarily interfere with private business, or impose unusual and unnecessary restrictions upon lawful occupations." *Lawton v. Steele,* 152 U.S. 133, 137, 14 S.Ct. 499, 501, 38 L.Ed. 385, 388-389 (1894). When, however, the legislative body undertakes to regulate a business, trade, or profession, the courts will assume it acted within its powers until the contrary appears. *Cheek v. City of Charlotte, supra; Roller v. Allen, supra.*

The record is not entirely clear as to precisely what right defendant was allegedly deprived of by operation of the charitable exemption. That is, whether defendant sought to earn his livelihood from the proceeds of his lottery, making that his "profession" or "occupation," or whether defendant is a private homeowner seeking to sell his own home in a depressed economy by a novel means of real estate marketing and financing. However, in his brief defendant urges that his right to earn a livelihood has been impaired. Therefore, it will be assumed that the only interest impaired by the operation of the gambling statutes is defendant's interest in conducting a lottery for his personal gain.

The defendant's claim to unconstitutional impairment of his right to earn a livelihood from lottery proceeds is considerably undercut by the fact that there is no constitutional right to gamble, and it is generally held that the law may rightfully regulate or suppress gambling without interfering with any of those inherent rights of citizenship which it is the object of government to protect and secure. *Lewis v. United States,* 348 U.S. 419, 99 L.Ed. 475, 75 S.Ct. 415, *reh. denied,* 349 U.S. 917, 99 L.Ed. 1250, 75 S.Ct. 602 (1955); *Marvin v. Trout,* 199 U.S. 212, 50 L.Ed. 157, 26 S.Ct. 31 (1905). *See generally* 38 Am. Jur. 2d, Gambling, § 10, p. 116-117 (1968).

It has long been held in North Carolina that the legislature, through the exercise of its police power, may prohibit or regulate gambling. *State v. Felton,* 239 N.C. 575, 80 S.E. 2d 625 (1954); *Taylor v. Racing Assoc.,* 241 N.C. 80, 84 S.E. 2d 390 (1954); *Calcutt v. McGeachy,* 213 N.C. 1, 195 S.E. 49 (1938); *State v. Lipkin,* 169 N.C. 265, 84 S.E. 340 (1915). Lotteries are a form of gambling, as that term is defined under the law. *State v. Lipkin, supra. See also* G.S. 14-292 (making gambling for money or property a misde-

meanor). The various gambling prohibitions have heretofore been understood as expressions of a state policy to suppress and prohibit gambling as a business, " 'the tendency of which, as shown by experience, is to weaken or corrupt the morals of those who follow it, or to encourage idleness, instead of habits of industry. . . .' " *Calcutt v. McGeachy, supra,* at 7, 195 S.E. 2d 53, *quoting, Ex Parte O'Shea,* 11 Cal. App. 568, 105 P. 776, 777 (1909). In *State v. Lipkin, supra,* the Supreme Court upheld G.S. 14-290 against the defendant's constitutional challenge on the following grounds:

> "Like any other species of gambling, lotteries have a pernicious influence upon the character of all engaged in them. This influence may be as direct and the immediate consequences as disasterous as in some kinds of gambling which rouse the violent passions and stake the gambler's whole fortune upon the throw of a die."
>
>       *          *          *
>
> They are both intended to attract the player to the game, and have practically the effect of inducing others, by this easy and cheap method of acquiring property of value, to speculate on chances in the hope that their winnings may far exceed their investment in value. This is what the law aims to prevent in the interest of fair play and correct dealing, and in order to protect the unwary against the insidious wiles of the fakir or the deceitful practices of the nimble trickster.

169 N.C. at 272-273, 84 S.E. at 343-344, *quoting Thomas v. People,* 59 Ill. 160. Thus, it is clear that gambling is a proper subject for either complete prohibition or conditional regulation under the police power. It is also evident without need of citation that the promotion of general charitable, civic, educational and public safety purposes is a proper object of legislation.

By enacting G.S. 14-292.1, the legislature chose to legalize and regulate two forms of gambling—bingo games and raffles. Notwithstanding the fact that defendant has no constitutional right to gamble, he does have a constitutional right to fair and impartial laws. However, it is also clear that the extent of the police power to regulate legalized gambling is altogether of a greater

degree than it would be to regulate other innocuous, traditionally "lawful" trades, occupations or money-making schemes. Accordingly, the legislature could reasonably conclude that the marginal liberty or property interest of individuals seeking to conduct gambling activities for personal profit was outweighed by the degree of public benefit to be derived from bingo games and raffles conducted by regulated nonprofit religious, charitable or civic organizations raising revenues for statutorily designated purposes.[3] We are unable to conclude that the basis for enacting a charitable exemption from the general prohibition against gambling is so lacking in rationality as to deny defendant due process of law under either the state or federal constitutions. *See Williamson v. Lee Optical Co.*, 348 U.S. 483, 99 L.Ed. 563, 75 S.Ct. 461 (1955) (state law prohibiting opticians from fitting frames and replacing broken eyeglasses upheld against Fourteenth Amendment due process challenge on grounds that law has a rational relation to a legitimate state interest[4]) and *Assoc. of Licensed Detectives v. Morgan, Attorney General, supra* (state law pro-

---

3. Subsection (d) of G.S. 14-292.1 contains a provision expressly authorizing religious organizations to use gambling proceeds for *religious purposes*. Furthermore, the State in its brief repeatedly argues that the legitimate state purpose behind the exception was *to promote charitable and religious purposes*. We have serious doubts as to the constitutionality of a law whose primary purpose and effect would be to *aid religion* by the grant of a special privilege to conduct revenue raising activities denied the public at large, the proceeds of which are used for *religious purposes*, such as the training of ministers or the buying of Bibles. It would appear that such a law would be one "respecting an establishment of religion" in violation of the First Amendment to the United States Constitution and Article I, § 13 of the North Carolina Constitution. However, the Establishment Clause issue is not properly before this Court at this time because it did not form the basis of the trial court's order dismissing the warrants against defendant, and was not otherwise directly addressed by either the defendant or the State in their briefs. Furthermore, in view of the severability of the provisions of G.S. 14-292.1, see discussion *infra*, we need not reach this issue in order to resolve the appeal before us. We note this troubling feature of the statutory exemption only in passing, inasmuch as the State repeatedly based its arguments in support of the challenged legislation on a rationale of questionable constitutionality.

4. We note that a similar law was enacted in North Carolina and challenged as violating the Law of the Land Clause. Our Supreme Court, upon reviewing the evidence, held the law unconstitutional on the grounds that there was no rational basis to support the prohibition in light of the fact that an optician is as capable of rendering these services as an optometrist. *Palmer v. Smith*, 229 N.C. 612, 51 S.E. 2d 8 (1948). However, even under the somewhat more "active" review of substantive rationality under Article I, § 19, we find no due process violation in the exemption to the gambling prohibitions.

hibiting a special policeman from holding an incompatible second office upheld against challenge under Law of the Land Clause in Article I, § 19).

However, defendant has raised a serious question as to whether the charitable exemption so seriously undermines the legislative purpose in prohibiting gambling as an inherently injurious or immoral activity as to bear no rational relationship to that purpose, thereby rendering the statutes violative of due process. In other words, if lotteries or bingo games injure public morals at all, they injure them the same whether conducted by defendant or by one of the exempt organizations, and conversely, if lotteries or bingo games may be conducted by those organizations without injury to the public, the same is true of a regulated lottery conducted by the defendant. The thrust of this argument is that by enacting G.S. 14-292.1, the legislature has impliedly modified the policy that gambling by lottery or bingo is inherently injurious to public morals and order and, as modified, the policy admits of no rational distinction between a lottery conducted by defendant or by a fraternal or civic organization.

The foregoing argument is, in essence, a companion argument to defendant's equal protection challenge, and it will be treated more fully under that constitutional provision. However, assuming that not all gambling activities are *inherently injurious* to public morals, and may be considered merely as a type of trade, occupation or fundraising activity, it is well established that if the *manner* in which a trade, occupation or other activity is conducted will probably result in injury to the public order or morals, the police power of the State may lawfully be used to eliminate the hazard. *Cheek v. City of Charlotte, supra* at 297, 160 S.E. 2d at 21-22. We conclude that the legislature could reasonably determine that commercialized gambling for profit is typically conducted in such a manner as to threaten the public order and morals, and seek to suppress it, while allowing religious and charitable organizations to conduct bingo games and raffles without violating the due process rights of individuals such as defendant McCleary.

EQUAL PROTECTON

[3]  Although the operation of gambling activities and the promotion of charitable and civic institutions and purposes are proper

subjects for regulation under the police power, such regulation may not arbitrarily discriminate between similarly situated persons or organizations. Rather, the regulation must be uniform, fair and impartial in its operation. *Cheek v. City of Charlotte, supra.* Where a statute is challenged on the basis that it denies a person equal protection under the law, the level of judicial scrutiny depends on whether the alleged denial involves a fundamental right or a suspect class. *Texfi Industries v. City of Fayetteville,* 301 N.C. 1, 269 S.E. 2d 142 (1980). Defendant argues that the effect of the statute is that in order to lawfully conduct a lottery, he must be a member of one of the organizations with respect to which the statutes he was charged with violating do not apply, thus infringing on his fundamental First Amendment right of free association.

Defendant's contention is inventive, however, it lacks merit. Inasmuch as we have previously found that defendant has no constitutional right to conduct a lottery, the statute does not put him to a waiver of one fundamental constitutional right in order to freely exercise his right not to join one of the exempt organizations. Thus, we find no impairment of a fundamental right. Defendant has not asserted membership in a suspect class nor argued that the statute discriminates on such a basis, and we perceive no basis for his doing so. There being no fundamental right or suspect class involved in defendant's equal protection challenge, the "rational relation" test is appropriate. The question then becomes whether the State may constitutionally allow the "exempt organizations" as defined in G.S. 14-292.1 to conduct bingo or raffles, while denying that privilege to all other persons.

The general rules for determining the constitutionality of legislative classifications are well established. The United States Supreme Court, in discussing the problem of legislative classification in general, has stated that:

[T]he Fourteenth Amendment permits the states a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on ground wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted

within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.

*McGowan v. Maryland,* 366 U.S. 420, 425-426, 6 L.Ed. 2d 393, 399, 81 S.Ct. 1101, 1105 (1961). Our Supreme Court, in *Guthrie v. Taylor,* 279 N.C. 703, 185 S.E. 2d 193 (1971), *cert. denied,* 406 U.S. 920, 32 L.Ed. 2d 119, 92 S.Ct. 1774 (1972), stated that the test is whether the difference in treatment made by the law has a reasonable basis in relation to the purpose and subject matter of the legislation. A statute is only void as denying equal protection when similarly situated persons are subject to different restrictions or are given different privileges under the same conditions. *Cheek v. City of Charlotte, supra* at 299, 160 S.E. 2d at 23. In other words, the law must not arbitrarily discriminate between those in like situations and the distinctions that provide the basis for the claim that equal protection was denied must bear some rational relation to a legitimate governmental interest.

Defendant contends that the classifications imposed by the statute bear no relation to any governmental interest, that they are arbitrary, and that they unreasonably discriminate between classes of citizens. The State contends merely that the classifications promote "charitable and religious purposes" and therefore bear a rational relationship to the legitimate state interests of promoting public morals and the general welfare. In its brief, the State specifically argues as follows:

The statute sought to grant a limited exception to conduct lotteries to legitimate charitable and religious organizations pursuant to the section's terms while prohibiting individuals from conducting lotteries. The object of the exception was to promote charitable and religious purposes. Moreover, those in the excluded class were treated uniformly. Therefore, the statute was not in violation of equal protection guaranteed by the United States Constitution or the North Carolina Constitution.

Although the State's argument has the virtue of both clarity and brevity, we are not completely persuaded by its reasoning because it fails to address the central question presented by this appeal. That is, whether the legislature may constitutionally

determine that gambling activities carried on by the exempt organizations are of a different nature, or are typically carried on in a different manner, than those conducted by individuals or groups organized for profit, and accordingly afford them different treatment under the criminal law, for it is clear that special exemptions in gambling prohibitions must be reasonably related to the goals of those prohibitions.

The exemption for bingo games and raffles is available only to the classes of organizations listed. Those are, generally speaking, organizations that (1) have been in continuous existence in the county of operation for at least one year, (2) are exempt from taxation under either the enumerated provisions of the Internal Revenue Code or similar provisions of the North Carolina General Statutes, (3) as bona fide nonprofit charitable, civic, religious, fraternal, patriotic or veterans organizations, or as a nonprofit volunteer fire department or nonprofit volunteer rescue squad or as a bona fide homeowners' or property owners' association.

The basic goal of the exemption must be seen as permitting established organizations that are required by law to have a general nonprofit charitable or civic orientation to raise revenues for charitable and civic purposes as well as to perpetuate themselves so that they may carry out these functions. With two exceptions that will be discussed *infra*, the classes of organizations contained in G.S. 14-292.1 are reasonably related to that goal. The organizations exempt from taxation under Internal Revenue Code Sections 501(c)(3), 501(c)(4), 501(c)(8), 501(c)(10), 501(c)(19) and 501(d) and under the similar provisions of G.S. 105-130.11 are all required by law to have a general charitable, religious, civic or educational purpose or orientation. In general, it is required either that no part of the net earnings of these organizations inure to the benefit of any private member, individual, or stockholder or that the group not be organized for profit.

We find that the distinction made between individuals and organizations conducting lotteries for personal profit and the exempt organizations, which, by virtue of their legal status, are not allowed to profit from their activities except in such a way as to promote purposes and goals that proceed from charitable, civic or altruistic motivations is a reasonable one and that it bears a ra-

tional relation to the purpose of the gambling prohibitions in general. The reasons traditionally cited for prohibiting gambling fall into two basic categories: (1) that the activity is inherently immoral or that it tends to weaken morals and encourage idleness, *Calcutt v. McGeachy, supra* and (2) that the unwary public needs to be protected from the unscrupulous operator, *State v. Lipkin, supra.* The legislature in 1979 could reasonably have concluded that bingo games and raffles are not inherently immoral, and that they do not have a totally pernicious influence on the character of the player. Further, that the player's motivation of personal gain through gambling is tempered by the knowledge that his or her "donation" is going to generally charitable or public service purposes. In addition, it could reasonably be determined that the consequences to society are not the same as those where the profit goes to commercialized gambling, or that the danger to society is different from that posed by professional gambling inasmuch as the game operator is, for example, a regulated charitable or religious organization and not a "fakir" or "nimble trickster." *See State v. Lipkin, supra.*

Instructive on the constitutionality of such distinctions under the Fourteenth Amendment is *McGowan v. Maryland, supra.* In *McGowan,* a Maryland "Sunday closing law," which prohibited most, but not all, forms of commercial activity on Sundays was upheld against challenges based on the Due Process and Equal Protection Clauses, the Free Exercise Clause and the Establishment Clause. The defendants were convicted for selling, *inter alia,* a can of floor wax and a toy submarine in their employer's discount department store. The United States Supreme Court held constitutional a distinction made between types of goods and food items that could be sold which, *inter alia,* permitted in a beachside county, the sale of tobacco products, bread, milk, soft drinks, confectionary, fruits, oils, greases, drugs and medicines, while, by necessity, prohibiting the sale of toy submarines, floor waxes, meats and vegetables. The Court reasoned that a legislature could reasonably find that the Sunday sale of the exempted commodities was necessary either for the health of the populace or for the enhancement of the recreational atmosphere of the day, and so rejected the defendant's arguments that the statutory exemptions were without rational relation to the object of the legislation and that the exemptions rendered arbitrary the

statute under which they were convicted. 366 U.S. at 426, 6 L.Ed. 2d at 399, 81 S.Ct. at 1105. In *Mobile Home Sales v. Tomlinson,* 276 N.C. 661, 174 S.E. 2d 542 (1970), our Supreme Court, *citing McGowan v. Maryland, supra,* upheld an ordinance which prohibited the sale of mobile homes on Sunday but allowed the sale of conventional homes against a challenge under the Equal Protection Clause of Article I, § 17 of the North Carolina Constitution.[5] The court stated that the determinative question was not whether the difference in treatment was impermissible on the basis that the thing sold is designed for use as a residence in each case, but rather,

> The determinative question is whether the legislative body could reasonably conclude that the customary practices and procedures followed in selling mobile homes, not yet located where they are to be used as homes, are substantially more likely to impair Sunday as a day of general rest and relaxation than are the customary practices and procedures followed in selling homes already built upon the lots on which their owners will live in them.

276 N.C. at 670-671, 174 S.E. 2d at 549. The court found that more or less continuous traffic movement, congestion and noise were likely to be a recurrent feature at a mobile home lot, but not at the site of a fixed location conventional home sale, and ruled that the difference in treatment for the latter class was rationally related to the purpose of the Sunday sale prohibitions.

In general, state legislatures may distinguish between classes of persons falling under the prohibitions of a criminal statute, provided that the class selected is identified in terms which clearly show that persons within that class constitute a dangerous element in the community which the legislature in its discretion could put under appropriate control without violating the Equal Protection Clause of the Fourteenth Amendment. *See Peterson v. Gaughan,* 404 F. 2d 1375 (1st Cir. 1968). Similarly, exemptions to criminal prohibitions may be sustained where the class exempted bears a rational relationship to, and is not inconsistent with, the purpose of the prohibitions. Thus, a classification contained in a

---

5. Article I, § 17 was re-enacted as Article I, § 19 in 1970.

Utah statute which provided that it would be an affirmative defense to prosecution for distribution of pornographic materials if the distribution was restricted to institutions or persons having scientific, educational, governmental, or other similar justifications for possessing the pornographic material withstood an equal protection challenge in *Piepenburg v. Cutler*, 649 F. 2d 783 (10th Cir. 1981). *See also U. T. Inc. v. Brown, supra*, 457 F. Supp. at 167 (no equal protection violation in that portion of an ordinance of the City of Gastonia prohibiting the commercial exploitation of obscenity which allowed the exhibition of constitutionally unprotected art which was not for sale at the time of the exhibition, but prohibited the exhibition of obscene material in exchange for an admission fee).

Legislative authorization for bona fide nonprofit charitable and civic organizations to conduct bingo games and raffles is no different in principle from the foregoing statutory exemption for permissible uses of obscene materials. Our research discloses that courts in some jurisdictions have upheld similar statutory exemptions on the rationale that gambling is a business, "not so completely fraught with social evils permitting almost unfettered legislative regulation," so that it may be only partially proscribed so long as the basis for the partial proscription has a reasonable relationship to the regulated activity. *State v. Gedarro*, 19 Wash. App. 826, 579 P. 2d 949 (1978).

> Underlying the Gambling Act, and consonant with the legislative recognition that professional gambling is interrelated with organized crime, are policies which attempt to restrain personal profits realized through professional gambling activities and to discourage participation in such activities. RCW 9.46.030 is consistent with the state's interest to suppress moral decay and criminal propensities that accompany professional gambling because (1) it permits the public to engage only in pastimes that tend more toward amusement than profit, and (2) it promotes the public interest in supporting charitable activities, thus differentiating between gambling for profit and professional fund raising by a bona fide charitable organization. The statutory regulations afford the state an opportunity to scrutinize the activities of the charitable organizations and licensed individuals to ensure their eligibility pursuant to the statutory scheme.

579 P. 2d at 951. In *Jamestown Lions Club v. Smith,* 45 Ohio Ops. 157, 100 N.E. 2d 540 (1951), the court upheld a similar statute and, in passing, observed that when bingo and other games of chance are conducted by clubs, lodges, societies, or churches for the benefit of charitable purposes and public benefit causes, they do no harm, but in fact might do a great deal of good. *See also Carroll v. State,* 361 So. 2d 144 (Fla. 1978) (general thrust of the classification allowing nonprofit and veterans' organizations to conduct bingo games is that the proceeds are donated to charitable, civic, community, benevolent, religious, scholastic or similar endeavors for the general welfare, removing bingo profits from the purview of organized gambling). *See generally* Anno., 42 A.L.R. 3d 663 (1972) and Anno., 103 A.L.R. 875 (1936). Thus, as we stated earlier, the legislature could reasonably conclude that although the activity in each instance is, nonetheless, gambling, the customary practices of commercialized or professional gambling are substantially more likely to adversely affect the public order and morals than those attendant to bingo games and raffles or lotteries conducted by nonprofit, charitably oriented organizations.

Defendant attempts to support his charge of arbitrariness by pointing out that certain types of organizations exempt from income taxes by the provisions of Internal Revenue Code, 26 U.S.C. § 501(e), referred to in G.S. 14-292.1, are not similarly exempted by that statute. Defendant argues that organizations such as business leagues, Chambers of Commerce, real estate boards and other organizations included in 501(c) would not, under G.S. 14-292.1, be allowed to conduct lotteries. This argument ignores the basis for the legislative choice between the types of nonprofit organizations eligible for tax-exempt status under the Internal Revenue Code, 26 U.S.C. § 501(c). The distinction made between Section 501 tax-exempt organizations for purposes of the bingo and raffle exemption rests on the general charitable, civic, benevolent, fraternal or patriotic nature of the organizations permitted to conduct gambling activities. The excluded nonprofit organizations defendant points to are not so oriented, and would not be rationally related to the State's purpose in enacting G.S. 14-292.1.

Next, we address the concern voiced by defendant that the statute fails the rational relation test in that the organizations may use the money generated by lotteries,

> for purchasing, constructing, maintaining, operating or using equipment or land or a building or improvements thereto owned by and for the exempt organization and used for civic purposes or made available by the exempt organization for use by the general public from time to time, or to foster amateur sports competition . . .

G.S. 14-292.1(d). While it is true that the statute allows for money to be spent in a way that appears to be self-serving and not in furtherance of a legitimate state interest, this argument overlooks the fact that these organizations are required by law to have a general charitable or civic orientation. The charitable and altruistic purposes of such organizations are capable of being furthered as much by the provision or maintenance of facilities in which to conduct these activities as by direct donations to the causes they promote. Furthermore, facilities so financed are required to be either used for civic purposes or made available to the public "from time to time," thereby insuring that the public derives some direct benefit from all fundraising lotteries. If, as defendant contends, this provision allows for misapplication of funds or other abuse of the privilege of conducting a lottery, those concerns are better addressed, and the goals of the state better served, by more vigorous enforcement of the law, rather than by judicial invalidation of it. Thus, we hold that the distinction drawn between nonprofit organizations that may conduct lotteries for charitable or civic purposes and those that cannot conduct lotteries for private gain is constitutionally permissible, and does not violate the equal protection provision of either the state or federal constitutions.

The foregoing discussion of the legislative goal to promote bona fide nonprofit charitable, civic, religious, fraternal, patriotic or veterans' organizations, or nonprofit volunteer fire departments or rescue squads and their *public works* leads to the inescapable conclusion that the provision of the statute exempting a "bona fide homeowners' or property owners' association" is unconstitutional class legislation. Inasmuch as the legislature chose to allow the exempt organizations to use the proceeds for their

own purposes, in order to meet the defendant's equal protection challenge, the very existence of such organizations must be seen to benefit the public welfare in some direct manner.

G.S. 105-130.11(a)(11) (Cumm. Supp. 1983) defines the exempt "bona fide homeowners' or property owners' associations" as follows:

> Corporations or organizations, such as *condominium associations, homeowner associations, or cooperative housing corporations not organized for profit, the membership of which is limited to the owners or occupants of residential units* in the condominium, housing development or cooperative housing corporation, and *operated exclusively for the management, operation, preservation, maintenance or landscaping of the common areas and facilities owned by such corporation or organization or its members situated contiguous to such houses, apartments or other dwellings or for the management, operation, preservation, maintenance and repair of such houses, apartments or other dwellings* owned by the corporation or organization or its members, but only if no part of the net earnings of such corporation or organization inures (other than through the performance of related services for the members of such corporation or organization) to the benefit of any member of such corporation or organization or other person.

The privilege to conduct a bingo game or raffle by private homeowner associations whose sole purpose is the landscaping of the common areas and facilities owned by such an association or its members has no relation whatsoever to the basic goal of the gambling prohibition or charitable exemption; these organizations do not have a general charitable orientation *by nature*, and are not required to so conduct themselves *by law*. The activity of homeowner associations conducting raffles to raise revenue for clubhouse construction or landscaping projects on their private property cannot be rationally distinguished from the activity of defendant conducting a lottery to sell a three bedroom brick home with oil heat or of any other private nonprofit group organized for its own self-serving purposes, which is also excluded by G.S. 14-292.1 from conducting a raffle or lottery.

In *Cheek v. City of Charlotte, supra,* our Supreme Court held unconstitutional a city ordinance which prohibited a person of one sex from giving a massage to a patron of the opposite sex in massage parlors, health salons, or physical culture studios, but permitted such conduct in barber shops, beauty parlors, Y.M.C.A. and Y.M.C.A. health clubs. The court found that the circumstances under which massage treatments were given in the two types of businesses were substantially similar, and that the classification in the ordinance was purely arbitrary, notwithstanding a presumed factual premise behind the ordinance that massage parlors are a business "where abuses of morality and violations of law may readily exist." 273 N.C. at 297, 160 S.E. 2d at 22. In concluding that the ordinance made a "purely arbitrary selection," the court stated, "It 'has no reasonable relation to the purposes of the law, only serving to mechanically split into two groups persons in like situations with regard to the subject matter dealt with but in sharply contrasting positions as to the incidence and effect of the law.' " 273 N.C. at 299, 160 S.E. 2d at 23, *quoting State v. Glidden Co.,* 228 N.C. 664, 668, 46 S.E. 2d 860, 862 (1948).

We conclude that the statutory provision permitting homeowner or property owner associations to conduct bingo games or raffles bears no rational relation to the purposes of the gambling prohibitions or the charitable exemption, and has the effect of treating similarly situated persons and groups differently, without a rational basis for such differential treatment. Thus, the provision is inconsistent with the constitutional guaranty of equal protection contained in Article I, § 19 of the North Carolina Constitution. Furthermore, Article I, § 32 states: "No person or set of persons is entitled to exclusive or separate emoluments or privileges from the community but in consideration of public services." The portion of G.S. 14-292.1(d) requiring the exempt organization facilities financed by bingo or raffle proceeds to be made available for use by the general public "from time to time" is simply insufficient to prevent the grant of this special gambling privilege from violating the Exclusive Emoluments Clause of the North Carolina Constitution. *See State v. Felton, supra* (exclusive privilege granted by statute to franchise holder to operate a dog track in consideration of 10% of gross receipts violates equal pro-

tection and exclusive emoluments or privileges provisions of North Carolina Constitution).

The Editor's Notes to G.S. 14-292.1 indicates that the statute contains a severability clause. Section 8 of Session Laws 1979, c. 893 states as follows:

> If any provision of this act or the application thereof to any person or circumstances is held invalid, the invalidity does not affect other provisions or applications to the act which can be given effect without the invalid provision or application and to this end the provisions of this act are severable.

We conclude that the invalidity of the provision of G.S. 14-292.1 exempting homeowner and property owner associations from the lottery prohibitions contained in G.S. 14-289 and 14-290 does not affect the other provisions of the act which were the subject of this appellate review, and those provisions of G.S. 14-292.1 may be given full effect. Only the offending provision need be severed from the act as a result of this decision. In all other respects we find defendant's claim that his right to equal protection under the law was violated by the operation of the charitable exemption to be without merit.

Defendant, in his brief, urges upon us other reasons for affirming the trial court's order on either due process or equal protection grounds. We have carefully considered these reasons and found them to be insufficient to support the trial court's order. In sum, we hold that with the exception of the provision relating to homeowner and property owner associations, G.S. 14-289, G.S. 14-290, and G.S. 14-292.1 do not violate the due process or equal protection provisions of either the North Carolina Constitution or the United States Constitution. Accordingly, the order of the trial court dismissing the warrants against defendant is reversed and the cause remanded to Superior Court for a trial on the merits.

Reversed and remanded.

Judge HILL concurs.

Judge PHILLIPS dissents.

Judge PHILLIPS dissenting.

G.S. 14-289, 14-290, and 14-292.1 make it a crime for anybody except certain exempt organizations to either advertise, conduct or promote gambling in any form, and permit the favored organizations to conduct and promote bingo games twice a week and lotteries or raffles once a month.

In my opinion these statutes improperly discriminate against defendant and everyone else but the exempt organizations, violate the equal protection clauses of the Fourteenth Amendment of the United States Constitution and Article I, § 19 of the North Carolina Constitution, and give the exempt organizations special privileges and emoluments in violation of Article I, § 32 of the North Carolina Constitution.

Since the exemption granted involved neither a fundamental right nor a suspect classification (at least as that term has heretofore been used, though statutes which permit prestigious organizations and their members to do with impunity what others go to jail for are more than suspect to me), the constitutional test that must be applied is whether the difference in treatment the statutes authorize has "a reasonable basis in relation to the purpose and subject matter of the legislation." *Guthrie v. Taylor,* 279 N.C. 703, 714, 185 S.E. 2d 193, 201 (1971), *cert. denied,* 406 U.S. 920, 32 L.Ed. 2d 119, 92 S.Ct. 1774 (1972).

The North Carolina Supreme Court has held that " 'Gambling is injurious to the morals and welfare of the people, *and it is not only within the scope of the state's police power to suppress gambling in all its forms, but its duty to do so.'* " *State v. Felton,* 239 N.C. 575, 581, 80 S.E. 2d 625, 630 (1954). (Quoting 24 Am. Jur. 399, Gaming and Prize Contests, § 3; emphasis added in the Supreme Court's opinion.) Exempting special groups from the general legislative ban against gambling cannot ameliorate the evils that gambling entails. The class of person or organization conducting a lottery is not rationally related to the need to protect people from gambling in all its forms; if lotteries injure public morals, then it makes no difference whether they are operated by the defendant or by a fraternal or religious organization. Indeed, it is utterly irrational to suppose that gambling in any form can be effectively discouraged by statutes that permit the favored few to promote and profit from it.

The State contends that exempting religious and charitable organizations from the gambling laws serves the desirable and legitimate legislative goal of promoting religious and charitable activities by requiring them to use the proceeds for such purposes. If these statutes in truth did that, they would perhaps violate the constitutional separation of church and state, but they only appear to do that. Though G.S. 14-292.1(d) permits exempt organizations to use lottery and bingo proceeds for "religious, charitable, civic, scientific, testing for public safety, literary, or educational purposes," it also permits the monies to be used

> for purchasing, construction, maintaining, operating or using equipment or land or a building or improvements thereto owned by and for the exempt organization and used for civic purposes or made available by the exempt organization for use by the general public from time to time, or to foster amateur sports competition . . . .

Allowing a homeowner's association or fraternal group or any other exempt organization to use gambling proceeds to buy themselves a building and grounds as long as they have a basketball court or softball field that is occasionally open to the public no more promotes religious or charitable activity than if the defendant or any other group, or person, was permitted to do the same thing.

Too, since exempt organizations may spend most of their gambling proceeds on themselves, another baleful effect of these statutes is to create a special money-making privilege for the favored organizations. A statute may bar a person from engaging in a business "only if it is reasonably necessary to promote the public health, morals, order, safety, or general welfare." *Cheek v. City of Charlotte*, 273 N.C. 293, 296, 160 S.E. 2d 18, 21 (1968). *State v. Felton, supra*, held that the exclusive emoluments provision of the North Carolina Constitution was violated by a law allowing a corporation to run a parimutuel system where 10% of the receipts went to the local government. Article I, § 32 of the North Carolina Constitution states: "No person or set of persons is entitled to exclusive or separate emoluments or privileges from the community but in consideration of public services." G.S. 14-292.1(d) gives special gambling privileges to exempt organizations without really requiring them to do anything for the public.

In my opinion the dismissal by the trial court was correct and my vote is to affirm it.