TOWN OF HUDSON v. MARTIN-KAHILL FORD LINCOLN MERCURY, INC.
AND NORTH CAROLINA NATIONAL BANK

No. 8125SC213

(Filed 20 October 1981)

**Garnishment § 1; Taxation § 37— taxes on bulk sale—garnishment of bank account—constitutionality of statutes**

> Statutes enabling a city to garnish defendant taxpayer's bank account for taxes due on a bulk sale without prior notice or hearing, G.S. 105-366 and -368, do not violate due process or equal protection rights of the taxpayers as guaranteed by the Constitutions of the United States and the State of North Carolina.

APPEAL by defendant from *Owens, Judge.* Judgment entered 11 February 1981 in Superior Court, CALDWELL County. Heard in the Court of Appeals 25 September 1981.

We are asked in this case to test the constitutionality of N.C.G.S. 105-366 and -368. Together these sections enabled the plaintiff taxing authority to garnish defendant taxpayer's bank account for taxes due on a bulk sale. The trial court found for the plaintiff, holding that the statutory provisions were constitutional and ordering the defendant garnishee to pay the amount due.

Pursuant to an agreement dated 24 September 1979, and a bill of sale dated 3 January 1980, the defendant, Martin-Kahill Ford Lincoln Mercury, Inc. (hereinafter Martin-Kahill), purchased an automobile dealership from Ray Skidmore Ford, Inc. The sale of assets was not in the ordinary course of business, but rather constituted the sale of a major part of the stock of goods, materials, supplies, and fixtures as defined by Schedule E of the Revenue Act as set forth in N.C.G.S. 105-366.

In violation of N.C.G.S. 105-366(d)(1)(a), the seller failed to give notice of the sale to the tax collector at least forty-eight hours prior to the date of the sale. Within thirty days of the sale, the seller had not paid the taxes as is required under N.C.G.S. 105-366(d)(1)(b). In violation of N.C.G.S. 105-366(d)(2), the defendant purchaser failed to withhold from the purchase price an amount of money sufficient to pay the taxes due or to become due on the transferred property until the seller produced either a receipt showing that the taxes had been paid or a certificate that no

taxes were due. Thus the defendant, as purchaser, became personally liable for the amount of unpaid taxes.

On 19 May 1980,[1] the tax department for the Town of Hudson served a complaint and notice of attachment and garnishment on Martin-Kahill and on North Carolina National Bank, as garnishee, pursuant to N.C.G.S. 105-368(a) and (b). Martin-Kahill exercised its statutory right under N.C.G.S. 105-368(d) and (f) by serving an answer in which it raised numerous defenses, including the constitutional violations considered on this appeal. On 2 July 1980, the Town of Hudson filed with the clerk of superior court a tax collector's objections to defendant's statement of defense, together with copies of the other pleadings and a request for judgment. The case was heard on 11 February 1981.

*Bruce W. Vanderbloemen for plaintiff appellee.*

*Cagle and Houck, by Joe N. Cagle, for defendant appellant.*

MARTIN (Harry C.), Judge.

It is Martin-Kahill's contention that the garnishment of its bank account at North Carolina National Bank, without prior notice or hearing, violated its due process and equal protection rights as guaranteed by the constitutions of the United States and the state of North Carolina.

Defendant has cited numerous federal cases as authority for the proposition that a fundamental requirement of due process in any proceeding is "notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Central Hanover B. & T. Co.*, 339 U.S. 306, 313, 94 L.Ed. 865, 873 (1950). We are also cited to that line of cases which holds that to meet due process requirements a hearing must be afforded before a citizen is deprived of any significant property interest. *North Georgia Finishing v. Di-Chem*, 419 U.S. 601, 42 L.Ed. 2d 751 (1975); *Mitchell v. W. T. Grant Co.*, 416 U.S. 600, 40 L.Ed. 2d 406 (1974); *Fuentes v. Shevin*, 407 U.S. 67, 32 L.Ed. 2d 556 (1972); *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 23 L.Ed. 2d 349 (1969).

---

1. A second complaint and notice of garnishment was served on defendant on 28 May 1980 to correct plaintiff's oversight in failing to include with the first notice a copy of the applicable statutes as required by N.C.G.S. 105-368 (b)(5).

However, under certain circumstances federal and state statutes permitting the seizure of property without a prior hearing have been held constitutional. *Mackey v. Montrym,* 443 U.S. 1, 61 L.Ed. 2d 321 (1979); *Dixon v. Love,* 431 U.S. 105, 52 L.Ed. 2d 172 (1977); *Commissioner v. Shapiro,* 424 U.S. 614, 47 L.Ed. 2d 278 (1976); *Mitchell, supra; Phillips v. Commissioner of Internal Revenue,* 283 U.S. 589, 75 L.Ed. 1289 (1930); *Enterprises, Inc. v. Dept. of Motor Vehicles,* 290 N.C. 450, 226 S.E. 2d 336 (1976); *Kirkpatrick v. Currie, Comr. of Revenue,* 250 N.C. 213, 108 S.E. 2d 209 (1959); *Properties, Inc. v. Ko-Ko Mart, Inc.,* 28 N.C. App. 532, 222 S.E. 2d 267, *disc. rev. denied,* 289 N.C. 615 (1976). These cases distinguish themselves because the statutory procedures afforded adequate safeguards when considered in the context of the governmental interests involved. Thus, in resolving any claimed violation of procedural due process, a balance must be struck between the respective interests of the individual and the governmental entity seeking the remedy. *Goss v. Lopez,* 419 U.S. 565, 42 L.Ed. 2d 725 (1975). Our cases have consistently recognized that the government's interest in collecting its revenues weighs heavily in favor of summary proceedings. *Shapiro, supra; Fuentes, supra; Phillips, supra.*

Focusing our attention now on the present case, we note initially that the statutory scheme provided under N.C.G.S. 105-366 and -368 is designed, in pertinent part, to assist local tax collectors in the recovery of property taxes due as a result of bulk sale transactions. These provisions outline in detail the procedures to be followed by buyers, sellers, and the taxing authority:

§ 105-366. Remedies against personal property.—(a) . . . All tax collectors shall have authority to proceed against personal property to enforce the collection of taxes as provided in this section and in G.S. 105-367 and 105-368. . . .

(b) Remedies after Taxes are Due.—[T]he tax collector may levy upon and sell or attach the following property for failure to pay taxes:

. . . .

(5) The stock of goods or fixtures of a wholesale or retail merchant . . . in the hands of a purchaser or transferee thereof, or any other personal property of the purchaser or transferee of such prop-

erty, if the taxes on the goods or fixtures remain unpaid 30 days after the date of the sale or transfer, but in such a case the levy or attachment must be made within six months of the sale or transfer.

§ 105-368. Procedure for attachment and garnishment.— (a) [T]he tax collector may attach wages and other compensation, rents, bank deposits, the proceeds of property subject to levy, or any other intangible personal property in the circumstances and to the extent prescribed in G.S. 105-366(b), (c), and (d). . . .

(b) To proceed under this section, the tax collector shall serve or cause to be served upon the taxpayer and the person owing or having in his possession the wages . . . sought to be attached a notice as hereinafter provided, which notice may be served by any deputy or employee of the tax collector . . .

        .   .   .   .

(d) If the garnishee has a defense or setoff against the taxpayer, he shall state it in writing under oath, and, within 10 days after service of the garnishment notice, he shall send two copies of his statement to the tax collector by registered or certified mail. . . .

If the tax collector does not admit the defense or setoff, he shall set forth in writing his objections thereto and send a copy thereof to the garnishee within 10 days after receipt of the garnishee's statement, or within such further time as may be agreed on by the garnishee, and at the same time the tax collector shall file a copy of the notice of garnishment, a copy of the garnishee's statement, and a copy of the tax collector's objections thereto in the appropriate division of the General Court of Justice of the county in which the garnishee resides or does business, where the issues made shall be tried as in civil actions.

        .   .   .   .

(f) The taxpayer may raise any defenses to the attachment or garnishment that he may have in the manner provided in subsection (d), above, for the garnishee.

Defendant validly points out that the proceedings contemplated by these statutory provisions are, for the most part, extra-judicial in nature and afford neither a pre-garnishment nor post-garnishment hearing until the parties appear before a superior court judge, perhaps months after the initial complaint and notice of attachment is sent to the taxpayer. Defendant is also cognizant of the fact that had it complied with the mandate set out in subsection (d)(2), N.C.G.S. 105-366, there would have been no personal liability on its part. Defendant must surely be held to a knowledge of the law, and by failing to withhold an amount sufficient to pay the taxes due, has contributed to its own losses.

We believe that underlying this statutory scheme is a sound public policy justification. The seller of a business is not always readily accessible to the taxing authority once the sale has been consummated. As between two "innocent" parties, it is not the tax collector but the buyer, by failing to protect himself, who should bear the burden. The extent of the burden is defined by the taxing authority's need to promptly and effectively secure its revenues. It includes what the federal government and our own legislature have recognized as the inevitable delay occasioned by a pre-seizure hearing. *Shapiro, supra.*

It is also clear that the statute provides for ultimate judicial determination of the taxpayer's liability. Where "adequate opportunity is afforded for a later judicial determination of the legal rights, summary proceedings to secure prompt performance of pecuniary obligations to the government have been consistently sustained." *Phillips, supra,* at 595, 75 L.Ed. at 1296. The taxing authority is as anxious as the taxpayer to effect a speedy and final resolution of the matter and, with the cooperation of the taxpayer, judicial inquiry will be afforded as soon as the court system permits. Moreover, N.C.G.S. 105-368(g) provides that "[i]f, before or after judgment, adequate security is filed for the payment of the taxes, penalties, interest, and costs, the tax collector may release the attachment or garnishment."

In making our determination with respect to whether defendant's due process rights have been violated by the application of N.C.G.S. 105-366 and -368, we have looked not solely to those provisions authorizing garnishment of defendant's bank accounts, but

to the entire statutory scheme out of which the necessity for plaintiff's actions arose. We find that the statute is constitutional on its face and as applied.

Defendant's equal protection argument is tenuous. It alleges that because N.C.G.S. 105-368 does not supply guidelines or standards by which the tax collector is permitted to choose the method or means of collection, there is opportunity for arbitrary decision making which could result in invidious discrimination. Defendant fails to delineate for us the existence or identity of a classification, without which we are unable to test its allegation. The statute does not classify on its face — no one group is singled out for different treatment. Nor can we say that the purpose and effect of the statute is classification. Defendant has offered no evidence of discriminatory purpose or impact in the application of any of the options open to the tax collector under N.C.G.S. 105-368. *Arlington Heights v. Metro. Housing Corp.*, 429 U.S. 252, 50 L.Ed. 2d 450 (1977); *Washington v. Davis*, 426 U.S. 229, 48 L.Ed. 2d 597 (1976); *State v. Avery*, 299 N.C. 126, 261 S.E. 2d 803 (1980); *State v. Hough*, 299 N.C. 245, 262 S.E. 2d 268 (1980). In fact, as defendant has neither stated nor proved that it has been injured by the alleged discriminatory impact of the statute, we seriously question its standing to raise the equal protection issue on this appeal. *Warth v. Seldin*, 422 U.S. 490, 45 L.Ed. 2d 343 (1975); *Sierra Club v. Morton*, 405 U.S. 727, 31 L.Ed. 2d 636 (1972).

As contemplated by the statutory scheme in N.C.G.S. 105-366 and -368, it is within the tax collector's sound discretion to choose when, from whom and what remedial measures are necessary to collect taxes due as a result of a bulk sale. This is a permissible delegation of authority. *See Hospital v. Davis*, 292 N.C. 147, 232 S.E. 2d 698 (1977). Absent a showing of actual or potential abuse of discretion resulting in a discriminatory impact on this or other taxpayers, defendant's equal protection argument is without merit.

For the above stated reasons we hold that N.C.G.S. 105-366 and -368 are constitutional and the judgment below is affirmed.

Affirmed.

Judges MARTIN (Robert M.) and BECTON concur.