IN RE: ANNE M. LAMM, Respondent

No. 9327SC951

(Filed 20 September 1994)

**Attorneys at Law § 80 (NCI4th)— suspension of license for use of alcohol or mood-altering drugs—no predeprivation notice or hearing—rule not violative of due process or law of land clauses**

The application of Article VI, Section 5.i.(6) of the Rules of the North Carolina State Bar to the facts in this case did not violate respondent's rights under the Due Process clause of the Fourteenth Amendment of the United States Constitution or the Law of the Land Clause of Article I, § 19 of the North Carolina Constitution, since it was not required that respondent receive notice and an opportunity to be heard prior to the entry of an order suspending her law license for using alcohol or mood-altering drugs in sufficient amount to impair her ability to practice law; though respondent's continued possession and use of her law license was a substantial interest, and any hardship suffered during delay between erroneous deprivation and postsuspension restoration could not be undone, the 180-day revocation period could be shortened based upon respondent's actions; the rule provided for prompt postsuspension review which could occur at any time upon petition of the suspended attorney; the predeprivation procedure set forth in the rule provided a reasonably reliable basis for determining that the facts justifying suspension were as alleged by the petitioning PALS members; and the proceeding provided for in the rule promotes the State's compelling interest in preventing an impaired lawyer from engaging in conduct detrimental to the public, the courts, or the legal profession.

**Am Jur 2d, Attorneys at Law §§ 36-39, 90, 91, 96.**

**Misconduct involving intoxication as ground for disciplinary action against attorney. 1 ALR5th 874.**

Judge Orr concurring in part and dissenting in part.

Appeal by respondent from order entered 17 June 1993 by Judge Robert W. Kirby in Gaston County Superior Court. Heard in the Court of Appeals 11 May 1994.

*The North Carolina State Bar, by Carolin Bakewell, for petitioner-appellee.*

*George Daly and Sharon Sameck for respondent-appellant.*

MARTIN, Judge.

The Positive Action for Lawyers Committee of the North Carolina State Bar was created in 1979 pursuant to an amendment to Article VI, Section 5.i. of the Rules, Regulations and Certificate of Organization of the North Carolina State Bar ("State Bar Rules") "for the purpose of implementing a program of intervention for lawyers with a substance abuse problem which affects their professional conduct . . . ." *See* 302 N.C. 637 (1979). In 1989, Article VI, Section 5.i. was amended to add a new subsection (6) as follows, in pertinent part:

(6) If in the opinion of no less than two (2) members of the Positive Action for Lawyers Committee of the North Carolina State Bar and with the concurrence of the Executive Director of the State Bar and either the Chairman or Director of PALS, a lawyer is drinking alcohol or using mood-altering drugs in sufficient amount to impair his or her ability to practice law, said members of the Positive Action Committee may petition any Superior Court Judge, based upon the affidavit of at least two (2) persons attesting to such impairment of the lawyer, requesting an order of the Court, in its inherent power, suspending the lawyer's license to practice law in the State of North Carolina for a period of time not to exceed 180 days, or in the alternative, transferring the lawyer to inactive status, for a like period of time.

By petition in the cause and upon a satisfactory showing, said license to practice law may be reinstated, or the transfer to inactive status may be rescinded, at an earlier date upon a finding by the Court that the lawyer is no longer drinking alcohol or using mood-altering drugs in sufficient amount to impair his or her ability to practice law.

*See* 325 N.C. 750 (1989).

On 30 April 1993, two members of the Positive Action for Lawyers Committee ("PALS Committee"), Rachel Pickard and Robert L. Bradley, filed a verified petition pursuant to Article VI, Section 5.i.(6) requesting entry of an order suspending the law license of respondent on the ground that she was using alcohol and mood altering drugs in sufficient amounts to impair her ability to practice law. In support of

the petition, Pickard filed her own affidavit and the affidavit of the Clerk of Superior Court for Gaston County. The petition also recited that the Executive Director of the State Bar and the Director of the PALS Committee concurred in petitioners' opinion. After considering the petition and affidavits in an *ex parte* hearing without notice to respondent or any opportunity for her to be heard, Judge Robert Kirby, Resident Superior Court Judge of Gaston County, entered an order the same day suspending respondent's license to practice law for 180 days "or until such earlier date as this Court shall find that [respondent] is no longer drinking alcohol or using mood altering drugs in sufficient amounts to impair her ability to practice law." Respondent was served with a copy of the affidavits and order on 3 May 1993. On 11 June 1993, respondent filed a motion requesting that the proceeding against her be declared void and be expunged and, alternatively, that the 30 April 1993 order be set aside and that she be allowed to file an answer and be heard before action was taken against her. After a hearing, Judge Kirby denied respondent's motions, but proceeded to hear evidence and determined that respondent had entered into a contract for treatment and was no longer drinking alcohol or using mood altering drugs in sufficient amounts to impair her ability to practice law. Judge Kirby ordered, pursuant to Article VI, Section 5.i.(6), that respondent's license be reinstated. Respondent appealed.

Respondent contends that the proceeding pursuant to Article VI, Section 5.i.(6) of the State Bar Rules, suspending her license to practice law without providing her with presuspension notice or opportunity to be heard, deprived her of her right to due process under the Fourteenth Amendment to the United States Constitution and under Article I, § 19 of the North Carolina Constitution. "The Fifth and Fourteenth Amendments to the United States Constitution, together with the Law of the Land Clause of Article I, § 19 of the North Carolina Constitution, provide that no person shall be deprived of life, liberty or property without due process of law." *State v. McCleary*, 65 N.C. App. 174, 180, 308 S.E.2d 883, 888 (1983), *affirmed*, 311 N.C. 397, 316 S.E.2d 870 (1984). Article I, § 19 of the North Carolina Constitution is synonymous with "due process of law" as that term is applied under the Fourteenth Amendment to the federal Constitution. *In re Moore*, 289 N.C. 95, 221 S.E.2d 307 (1976); *McNeill v. Harnett County*, 327 N.C. 552, 398 S.E.2d 475 (1990), and United States Supreme Court interpretations of the latter, though not binding, are highly persuasive in construing the former. *Watch Co. v. Brand Distributors*, 285 N.C.

467, 206 S.E.2d 141 (1974). However, in deciding what procedural safeguards are due under Article I, § 19 of the North Carolina Constitution, the North Carolina Supreme Court has employed a somewhat different method of decision than that employed by the United States Supreme Court for deciding similar questions under the due process clause of the federal constitution. *Henry v. Edmisten*, 315 N.C. 474, 340 S.E.2d 720 (1986). Accordingly we must examine the procedures prescribed by the State Bar Rule at issue, and particularly as applied to respondent in this case, to determine whether they comport with the requirements of due process under both constitutions.

The parties agree that respondent's license to practice law constitutes a property interest which cannot be taken away without due process of law. *See Barry v. Barchi*, 443 U.S. 55, 61 L.Ed.2d 365 (1979); *In re Burton*, 257 N.C. 534, 126 S.E.2d 581 (1962). However, the parties disagree as to the requirements of due process in this situation. Respondent contends that due process required that she receive notice and opportunity to be heard prior to the entry of the 30 April 1993 order suspending her law license. The North Carolina State Bar contends that both Article VI, § 5.i.(6), and due process permit the order to be entered *ex parte* and provide the respondent with a sufficient immediate post deprivation remedy. We agree with the State Bar and affirm the order of the trial court.

Due process of law formulates a flexible concept, to insure fundamental fairness in judicial or administrative proceedings which may adversely affect the protected rights of an individual. *Baugh v. Woodard*, 604 F. Supp. 1529 (E.D.N.C. 1985), *affirmed in part, vacated in part*, 808 F.2d 333 (4th Cir. 1987); *State v. Tolley*, 290 N.C. 349, 226 S.E.2d 353 (1976). Due process means simply a procedure which is fair and does not mandate a single, required set of procedures for all occasions; it is necessary to consider the specific factual context and the type of proceeding involved. *Wilson v. Swing*, 463 F.Supp. 555 (M.D.N.C. 1978); *Poe v. Charlotte Memorial Hospital, Inc.*, 374 F.Supp. 1302 (W.D.N.C. 1974). In resolving any claimed violation of procedural due process, a balance must be struck between the respective interests of the individual and the governmental entity seeking a remedy. *Town of Hudson v. Martin-Kahill Ford*, 54 N.C. App. 272, 283 S.E.2d 417 (1981), *disc. review denied*, 304 N.C. 733, 288 S.E.2d 804 (1982). "[E]ntitlement to a hearing does not automatically flow from a finding that procedural due process is applicable." *Bowens v. Board of Law Examiners*, 57 N.C. App. 78, 83, 291 S.E.2d 170, 173 (1982) *quoting Tyler v. Vickery*, 517 F.2d 1089 (5th Cir. 1975),

*cert. denied,* 426 U.S 940, 49 L.Ed.2d 393 (1976). (Due process afforded by opportunity for failing bar applicants to be reexamined.) At a minimum, due process requires adequate notice of the charges and a fair opportunity to meet them, and the particulars of notice and hearing must be tailored to the capacities and circumstances of those who are to be heard. *Bowens v. N.C. Dept. of Human Resources,* 710 F.2d 1015 (4th Cir. 1983).

Where a predeprivation hearing is impractical and a postdeprivation hearing is meaningful, a State satisfies its due process obligation by providing the latter. *Giglio v. Dunn,* 732 F.2d 1133 (2d Cir. 1984), *cert. denied,* 469 U.S. 932, 83 L.Ed.2d 265 (1984); *See Waltz v. Herlihy,* 682 F.Supp. 501 (S.D.Ala. 1988), *affirmed,* 871 F.2d 123 (11th Cir. 1989). (Denial of presuspension hearing pursuant to statutes authorizing suspension of license to practice medicine because of dispensing controlled substances other than for legitimate medical purpose and because of inability to practice medicine with reasonable skill and safety due to use of chemicals did not constitute denial of due process.) Where the State has an important interest to protect and probable cause to believe that plaintiff poses a real and immediate danger to that interest, interim or temporary emergency deprivation of a property right pending a prompt judicial or administrative hearing is constitutional. *Barry v. Barchi, supra; Gershenfeld v. Justices of the Supreme Court of Pa.,* 641 F.Supp 1419 (E.D.Pa. 1986).

The United States Supreme Court has established a three-factor balancing test to resolve the due process issue in this context:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safe-guards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Matthews v. Eldridge,* 424 U.S. 319, 335, 47 L.Ed.2d 18, 53 (1976). Thus, we must first weigh the private interest affected by the challenged action. In this case, the private interest affected is respondent's interest in continued possession and use of her law license pending the outcome of a postsuspension hearing. The State Bar agrees that this is a substantial interest, and we recognize that any hardship suffered during delay between erroneous deprivation and postsuspension restoration cannot be undone. *See Henry v.*

IN RE LAMM

[116 N.C. App. 382 (1994)]

*Edmisten, supra.* Factors bearing on the weight of respondent's interest in continuous use of her law license include the maximum revocation period and the timeliness of postsuspension review. *Id.*

Under Article VI, § 5.i.(6), these factors operate conjunctively. Although the maximum revocation period is 180 days, the rule provides for an abbreviated period depending upon the actions of the suspended attorney. The rule provides for reinstatement of the license as soon as the suspended attorney demonstrates that he or she is no longer drinking alcohol or using mood-altering drugs in a sufficient amount to impair the ability to practice law. Thus, the length of the revocation period is ostensibly within the immediate control of the suspended attorney.

Similarly, the rule provides for prompt postsuspension review, which may occur at any time upon petition of the suspended attorney. In this case, although respondent waited over a month to file her motions, the motions were heard and ruled upon within six days of filing. The availability of prompt postsuspension review, along with a relatively brief suspension period, reduces the weight of the private interest in a suspended attorney's continued use of his or her law license pending the outcome of the postsuspension hearing. *See Mackey v. Montrym*, 443 U.S. 1, 61 L.Ed.2d 321 (1979); *Henry, supra.*

Second, the balancing test requires us to weigh the risk of erroneous deprivation of respondent's private interest as a result of the procedures used and the probable value of additional procedural safeguards. However:

> Due process does not mean that governmental decision making must comply with standards that assure error-free determinations . . . . When . . . prompt post deprivation review is available, what is generally required is no more than that the predeprivation procedures used be designed to provide a reasonably reliable basis for determining that the facts justifying the official action are as a responsible government official warrants them to be.

*Henry*, 315 N.C. at 484, 340 S.E.2d at 727-8. We believe that the predeprivation procedure set forth in Article VI, Section 5.i.(6) provides a reasonably reliable basis for determining that the facts justifying suspension are as alleged by the petitioning PALS members. The rule requires that at least two members of the PALS Committee have the opinion that a lawyer is drinking alcohol or using mood-altering drugs in sufficient amount to impair his ability to practice law. This opinion

must be concurred in by **either** the Chairman **or** Director of PALS **and** the Executive Director of the North Carolina State Bar. Additionally, the rule requires that the affidavit of at least two persons attesting to such impairment must accompany the petition. The petition and affidavits are then reviewed by a superior court judge who makes the final determination as to whether the facts require suspension of the lawyer's license to practice law.

Finally, we must weigh the State's interest served by the summary suspension procedure. The proceeding prescribed by Article VI, Section 5.i.(6) promotes the State's compelling interest in preventing an impaired lawyer from engaging in conduct detrimental to the public, the courts, or the legal profession. *See* State Bar Rules, Article VI, Section 5.i.(4). The summary and automatic character of the suspension is reasonably related to the purpose of the rule, i.e., to protect the public from lawyers whose ability to practice has been impaired by substance abuse. Presuspension hearings requiring notice and opportunity to be heard would encourage dilatory tactics on the part of impaired lawyers to try to maintain their privilege to license, frustrating the purpose of the rule and creating a further risk of damage to his or her clients and the proper administration of justice.

A recitation here of the evidence presented to Judge Kirby in the present case would serve no useful purpose, although we must review it to insure that appellant's rights were not violated by the rule as it was applied to her. It is sufficient to say that the evidence was substantial and is strikingly illustrative of the need for providing the State Bar's PALS program with an ability to move quickly to carry out the purposes of the rule.

In *Henry v. Edmisten, supra,* our North Carolina Supreme Court expressed dissatisfaction with the use of the "balancing test" to determine what due process is required under the Law of the Land Clause of Article I, § 19 of the North Carolina Constitution. *Id.* at 490, 340 S.E.2d at 731. The Court promulgated the following principle as to the minimal requirements of due process required by the Law of the Land Clause:

> When the furtherance of a legitimate state interest requires the state to engage in prompt remedial action adverse to an individual interest protected by law and the action proposed by the state is reasonably related to furthering the state interest, the law of the land ordinarily requires no more than that before such action is undertaken, a judicial officer determine there is probable cause

to believe that the conditions which would justify the action exist.

*Id.* at 494, 340 S.E.2d at 733. As we have discussed, after it has been demonstrated that an attorney is drinking alcohol or using mood-altering drugs in sufficient amount to impair his or her ability to practice law, the State has a legitimate interest in prompt remedial action to prevent the present and future danger which such person poses to the proper operation of our legal system and those who rely upon it. The State Bar PALS procedure, as contained in the rule, provides for independent judicial review by a superior court judge, who must determine if the affidavits and petition establish a sufficient showing to justify a suspension. This procedure satisfies the requirements for sufficient process under the Law of the Land Clause of the North Carolina Constitution.

We note with approval that the Council of the North Carolina State Bar has, apparently as a result of the concerns raised by appellant in this case, proposed that Article VI, Section 5.i. of the State Bar Rules be revised to provide for presuspension notice and hearing except in emergency circumstances. *See The North Carolina State Bar Newsletter,* Vol. 19, No. 3, p. 9. While we hold that the procedures prescribed by the current rule, and employed in this case, meet the minimal requirements of due process under our State and federal constitutions, we commend the State Bar for providing increased safeguards for the rights of attorneys while continuing its efforts to protect the public from, and provide assistance to, practitioners impaired by alcoholism or other substance addictive illness.

In summary, the application of Article VI, Section 5.i.(6) of the Rules of the North Carolina State Bar to the facts before us does not violate respondent's rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution or the Law of the Land Clause of Article I, § 19 of the North Carolina State Constitution.

Affirmed.

Judge COZORT concurs.

Judge ORR concurs in part, and dissents in part.

Judge ORR concurring in part and dissenting in part.

While I do not disagree with the analysis employed by the majority as it applies to the issues dealing with pre-deprivation hearings and a meaningful post-deprivation hearing, I find the Rule at issue in this case constitutionally infirm in one respect. Although there is a post-deprivation process by which an attorney can have his or her license reinstated, there is no provision or procedure to determine if the initial unilateral action of suspension was in fact appropriate. A post-deprivation hearing that merely reinstates a suspended license, upon a finding that at the time of the hearing the attorney involved is not impaired, provides no meaningful opportunity to contest the results of the original process and the resulting suspension. There should at a minimum be an opportunity for the affected party to challenge the initial action and the resulting suspension. For this reason, I concur in part and dissent in part.