STATE OF NORTH CAROLINA
v.
HENRY CHRISTOPHER AIKEN.
No. COA08-224
Court of Appeals of North Carolina
Filed October 21, 2008
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General, E. Michael Heavner, for the State.
Brian Michael Aus, for Defendant.
ARROWOOD, Judge.
Defendant appeals from judgment entered 14 August 2007 convicting him of failing to register as a sex offender as required by N.C. Gen. Stat. § 14-208.11 (2006). We find no error.
Henry Christopher Aiken (Defendant) was convicted of second degree sexual offense on 26 September 1988 and received a 20-year sentence. After two periods of parole and two parole violations, Defendant was ultimately released from the Department of Correction on 3 March 2000, and he initially properly registered to the Sex Offender Registry on 13 March 2000. The documents Defendant signed included the language that Defendant "must provide written notification of this address change to the Sheriff in the county where he/she has most currently registered." In 2000, Charisse Newsome (Newsome) began dating Defendant, and later that year, Defendant moved into Newsome's residence. In August 2004, Defendant, Newsome and Newsome's daughter moved into a different residence in Buncombe County, North Carolina, which neither Defendant nor Newsome owned. On at least two occasions  22 March 2001 and 21 September 2004  Defendant provided signed address change notices to the Buncombe County Sheriff's Office. The State Bureau of Investigation also mailed registered certified verifications to Defendant's registered address, which Defendant was required to sign and return within ten days. Defendant signed and returned his 2006 verification letter, dated 16 March 2006. Defendant and Newsome broke up after her daughter's birthday on 17 May 2006; Defendant moved out of the residence on 24 or 25 May 2006. Defendant took his clothes and living room furniture and told Newsome that he was "not coming back." He did not notify the Buncombe County Sheriff's Office of his address change.
On 30 May 2006, Defendant broke into his former Buncombe County residence by climbing through a window at 3:00 A.M. Defendant "crashed" the "window and AC and everything." Newsome moved out of the house shortly thereafter to live with her mother. Twice in early June, Newsome received calls from the sheriff's office stating that Defendant wanted to retrieve his belongings from the residence. Newsome said all that remained of Defendant's belongings were his winter coats, and she opted to take those to her attorney so that Defendant could retrieve them. In mid-June 2006, Newsome visited her former residence with the sheriff and saw Defendant climb out of the bedroom window and run away. The residence was "trashed" and "very dirty[,]" and there were "crack pipes . . . [and] cigarette butts everywhere[.]"
On 28 July 2006, Newsome faxed a note to the Buncombe County Sheriff's office, stating, "[Defendant] . . . moved out [of] my residence on May 1, 2006." Defendant was in the custody of Buncombe County Detention Center at this time. At trial, however, Newsome testified:
Q: [Ms.] Newsome, why did you put May 1st of 2006 on State's Exhibit No. 1?
A: Maybe just out of confusion. There was a lot going on; a lot going on.
. . . .
Q: And do you remember now it being later in May when the defendant moved out?
A: Yes.
Detective Courtney Mumm (Detective Mumm), employed with Buncombe County Sheriff's Office and a detective with the Sex Offender Registry Unit, testified that Defendant is a convicted sex offender and subject to the Sex Offender Registry law.
After his arrest on an unrelated offense on 4 June 2006, Defendant reported to the Buncombe County Jail that his address was 407 Wind Ridge Street. Detective Mumm had not received notice from Defendant of a change of address. A warrant was issued for his arrest on 31 July 2006, and on 4 December 2006, Defendant was indicted for failure to register as a sex offender. On 14 August 2007, the trial court entered judgment convicting Defendant of failure to register as a sex offender pursuant to N.C. Gen. Stat. § 14-208.11. From this judgment, Defendant appeals.

Jurisdiction
In Defendant's first argument, he contends that he was not required to register as a sex offender, because the period of his required registration had expired prior to his unreported move. Defendant argues that the trial court did not have jurisdiction. We disagree.
The law in effect at the time Defendant was first subject to the sex offender registration requirement provided:
The requirement that a person register under this Part automatically terminates 10 years from the date of initial county registration if the person has not been convicted of a subsequent offense requiring registration under this Article.
N.C. Gen. Stat. § 14-208.12A(a) (2006). Defendant contends that because he was "released" from the North Carolina Department of Correction upon his parole on 20 March 1995  after which he was reincarcerated for a parole violation to complete his 1988 sentence  the registration requirements for Defendant expired on 20 March 2005.
Defendant's argument is misplaced. Defendant was initially convicted of second degree sexual offense on 26 September 1988 and received a twenty year sentence. Defendant was paroled in 1993, and on 5 May 1994 Defendant was convicted of possession of stolen property and of failure to appear. Defendant received an eight year sentence for the 1994 convictions to run at the end of all sentences Defendant was obligated to serve. On 20 March 1995, Defendant was paroled again, and Defendant violated his parole. He was incarcerated for the 1988 second degree sexual offense and the 1994 convictions; Defendant completed serving this 1988 sentence on 30 May 1997, but Defendant was not released. He continued serving his sentence for the crimes for which he was convicted on 5 May 1994. Defendant was finally released on 3 March 2000, and he initially properly registered on 13 March 2000. Of significant import is the fact that there is no evidence of record that Defendant registered as a sex offender in 1993 or 1995, when Defendant was released on parole.
Because Defendant first registered on 13 March 2000, N.C. Gen. Stat. § 14-208.12A(a) requires that Defendant's ten-year required registration period began to run on 13 March 2000 and will not be completed until 12 March 2010. See N.C. Gen. Stat. § 14-208.12A(a) (providing that "[t]he requirement that a person register under this Part automatically terminates 10 years from the date of initial county registration"); see also, e.g., State v. Sparks, 362 N.C. 181, 182, 657 S.E.2d 655, 656 (2008) (stating that the defendant revoked his parole, was reincarcerated on felony sex offenses, and was properly charged with failing to comply with sex offender registration). In June 2006, when Defendant was indicted for failure to register as a sex offender, Defendant was still subject to the registry requirements, and his failure to provide written notice of a change in address violated N.C. Gen. Stat. § 14-208.11 (2006). This assignment of error is overruled.

Due Process
In Defendant's second argument, he contends that N.C. Gen. Stat. § 14.208.11, was unconstitutional and created a strict liability felony offense, which relieved the State of its burden of proving Defendant's criminal intent. We hold that Defendant's due process rights were not infringed.
The Due Process Clause of the Fifth Amendment to the United States Constitution guarantees that "[n]o person shall be . . . deprived of life, liberty, or property without due process of law." A similar requirement, that no "State [shall] deprive any person of life, liberty, or property without due process of law" is also comprised in the Fourteenth Amendment to the federal constitution. The Law of the Land Clause of the North Carolina Constitution, N.C. Const. art. I, § 19, "is synonymous with due process of law as used in the Fourteenth Amendment to the Federal Constitution." Rhyne v. K-Mart Corp., 358 N.C. 160, 180, 594 S.E.2d 1, 15 (2004).
Due process of law formulates a flexible concept, to insure fundamental fairness in judicial or administrative proceedings which may adversely affect the protected rights of an individual. Due process means simply a procedure which is fair and does not mandate a single, required set of procedures for all occasions; it is necessary to consider the specific factual context . . . involved. In resolving any claimed violation of procedural due process, a balance must be struck between the respective interests of the individual and the governmental entity seeking a remedy. . . . At a minimum, due process requires adequate notice of the charges and a fair opportunity to meet them, and the particulars of notice and hearing must be tailored to the capacities and circumstances of those who are to be heard. In re Lamm, 116 N.C. App. 382, 385-86, 448 S.E.2d 125, 128-29 (1994) (citations omitted).
"Generally a legislature need do nothing more than enact and publish the law, and afford the citizenry a reasonable opportunity to familiarize itself with its terms and to comply," Texaco, Inc. v. Short, 454 U.S. 516, 532, 70 L. Ed. 2d 738, 752 (1982), and "[a]ll citizens are presumptively charged with knowledge of the law[.]" Atkins v. Parker, 472 U.S. 115, 130, 86 L. Ed. 2d 81, 93 (1985). "The presumption is that any act passed by the legislature is constitutional, and the court will not strike it down if [it can] be upheld on any reasonable ground." Ramsey v. N.C. Veterans Comm'n, 261 N.C. 645, 647, 135 S.E.2d 659, 661 (1964). When considering the constitutional limitations on the power of state legislatures to define criminal offenses, the Court has stated: "There is wide latitude in the lawmakers to declare an offense and to exclude elements of knowledge and diligence from its definition." Lambert v. California, 355 U.S. 225, 228, 2 L. Ed. 2d 228, 231 (1957).
In Lambert, the United States Supreme Court stated that, "actual knowledge of the duty to register or proof of the probability of such knowledge and subsequent failure to comply are necessary[,]" Id. 355 U.S. at 229, 2 L. Ed. 2d at 232, before a conviction under a general criminal registration act can stand. With regard to our Sex Offender Registration requirement, N.C. Gen. Stat. § 14-208.11, this Court has held that "although ignorance of the law is no excuse, and the statute at issue does not require theState to prove intent, due process requires that defendant have knowledge, actual or constructive, of the statutory requirements before he can be charged with its violation." State v. Young, 140 N.C. App. 1, 12, 535 S.E.2d 380, 386 (2000) (emphasis added).
Defendant specifically argues that the amendments to N.C. Gen. Stat. § 14-208.11 reveal that our legislature did not intend for N.C. Gen. Stat. § 14-208.11 to be a strict liability statute. In 1995, N.C. Gen. Stat. § 14-208.11 (1995), stated the following: "(A) A person required by this article to register who, knowingly and with the intent to violate the provisions of this article, fails to register shall be guilty of a Class 3 Misdemeanor for a first conviction of a violation of this article, and a Class I felony for a subsequent conviction of a violation of this article." 1995 N.C. Sess. Laws 545. The 1997 amendment to N.C. Gen. Stat. § 14-208.11 (1997) deleted and replaced the foregoing language with the following:
(A) Who does any of the following is guilty of a Class F felony:
(1) Fails to register.
(2) Fails to notify the last registering sheriff of a change of address.
(3) Fails to return a verification notice as required under G.S. 14-208.9A.
1997 N.C. Sess. Laws 516. However, In 2006, the legislature again amended the language of the statute:
(a) A person required by this Article to register who willfully does any of the following is guilty of a Class F felony:
(1) Fails to register as required by this article.
(2) Fails to notify the last registering sheriff of a change of address as required by this article.
(3) Fails to return a verification notice as required under G.S. 14-208.9A. (emphasis added).
2006 N.C. Sess. Laws 247. The last amendment, effective 1 December 2006, and applicable to offenses committed on or after that date, inserted "willfully" in the introductory paragraph of subsection (a).
Defendant cites Ferrell v. Dept. of Transportation, 334 N.C. 650, 659, 435 S.E.2d 309, 315 (1993), for the proposition that subsequent amendments clarify legislative intent with regard to the original statute. Defendant applies Ferrell to this case, referring to the legislative history of N.C. Gen. Stat. § 14-208.11, to support the proposition that the legislature never intended for the statute to impose strict liability. Defendant argues that, in light of a 2006 amendment to N.C. Gen. Stat. § 14-208.11, which explicitly added the word "willfully," the former statute under which he was charged, N.C. Gen. Stat. § 14-208.11 (prior to the effective date of the amendment, 1 December 2006), was unconstitutional, and this Court should overturn the trial court's decision.
While Defendant's assertion that the statute under which he was charged imposes strict liability is true, see State v. White, 162 N.C. App. 183, 590 S.E.2d 448 (2004), State v. Bryant, 359 N.C. 554, 562-63, 614 S.E.2d 479, 484 (2005), this fact does not conclusively establish a violation of Defendant's due process rights. See Young, 140 N.C. App. at 12, 535 S.E.2d at 386 (stating that "although ignorance of the law is no excuse, and the statute at issue does not require the State to prove intent, due process requires that defendant have knowledge, actual or constructive, of the statutory requirements before he can be charged with its violation").
In State v. Smith, 90 N.C. App. 161, 164, 368 S.E.2d 33, 36 (1988), this Court stated that "in some instances . . . due process requires a finding of criminal intent, but those cases are clearly distinguishable from the present case." Smith cites Lambert, for the proposition that the "[S]tate could not criminalize a mere failure to act without showing that defendant knew of [the] duty to act." Smith, 90 N.C. App. at 164, 368 S.E.2d at 36. Our Supreme Court, however, has construed the Lambert exception "to the general rule that ignorance of the law is no excuse" to be "narrow." Bryant, 359 N.C. at 566, 614 S.E.2d at 487. The Court in Bryant noted the following:
[T]o be entitled to relief under the decidedly narrow Lambert exception, a defendant must establish that his conduct was "wholly passive" such that "circumstances which might move one to inquire as to the necessity of registration are completely lacking" and that [the] defendant was ignorant of his duty to register and there was no reasonable probability that [the] defendant knew his conduct was illegal.
Id. at 568, 614 S.E.2d at 488 (quoting Lambert, 355 U.S. at 228-29, 2 L. Ed. 2d at 231-32); see also State v. Verrier, 173 N.C. App. 123, 617 S.E.2d 675 (2005). In Bryant, 359 N.C. at 569, 614 S.E.2d at 489, the defendant sought to have N.C. Gen. Stat. § 14-208.11 (2003), declared unconstitutional based on insufficient notice of the existence of the criminal statute. The defendant in Bryant was a convicted sex offender from the State of South Carolina and was registered in that state. The defendant moved to Winston-Salem, North Carolina, and was arrested for failing to register as a sex offender in North Carolina. "[R]elying almost exclusively on Lambert," the defendant asserted "that the State must prove actual or probable notice of the duty to register in order to satisfy due process." Bryant, 359 N.C. at 564, 614 S.E.2d at 485 (internal quotation marks omitted). The Court concluded that the defendant's argument failed and reasoned that the "case [was] rich with circumstances that would move the reasonable individual to inquire of his duty to register in North Carolina such that defendant's conduct was not wholly passive and Lambert is not controlling." Id. at 568, 614 S.E.2d at 488.
First, defendant had actual notice of his lifelong duty to register with the State of South Carolina as a convicted sex offender. Second, defendant had actual notice that he must register as a convicted sex offender in South Carolina for "similar offenses from other jurisdictions" and had a duty to inform South Carolina officials of a move out of state "within 10 days of the change of address to a new state," which defendant failed to do. Third, defendant himself informed law enforcement authorities that he had been convicted of a sex offense in Florida. These circumstances coupled with the pervasiveness of sex offender registration programs certainly constitute circumstances which would lead the reasonable individual to inquire of a duty to register in any state upon relocation.
Id. "Simply put, a convicted sex offender's failure to inquire into a state's laws on registration requirement is neither entirely innocent nor wholly passive[.]" Id. The Court concluded that because of the foregoing circumstances, the defendant had sufficient notice such that defendant should have inquired into the applicable law of the state to which he relocated. The Court explained that because "the case sub judice [is] overflowing with circumstances `which might move one to inquire as to the necessity of registration[,]' . . . we hold that defendant's case does not fall within the narrow Lambert exception to the general rule that ignorance of the law is no excuse[,]" and the defendant's conviction did not violate due process. Id. at 569, 614 S.E.2d at 488.
In Young, this Court stated that the notice provisions of the registration act (N.C. Gen. Stat. §§ 14-208.8 and 14-208.11) remove the statute from due process attacks "[u]nder ordinary circumstances[.]" Young, 140 N.C. App. at 8, 535 S.E.2d at 384. The Court also held that an oral explanation of the registration requirements to a defendant by a member of a sheriff's department provides "actual knowledge enough to satisfy due process requirements for any reasonable and prudent man." Id. at 9, 535 S.E.2d at 385 (internal quotation marks omitted).
In the instant case, Defendant does not argue that he did not "knowingly and with the intent to violate the provisions of this article[,]" fail to register; neither does he argue that his failure to register was not "willful." See 1995 N.C. Sess. Laws 545; 2006 N.C. Sess. Laws 247. Rather, he argues that the statute is unconstitutional because it creates a strict liability offense, which does not require criminal "intent." Defendant correctly notes that White and Bryant, "explicitly found the General Assembly intended to delete the mens rea requirement from the sex offender registration statute[.]" Defendant cites Morissette v. United States, 342 U.S. 246, 96 L. Ed. 288 (1952), a case in which petitioner was charged with unlawfully and "knowingly" stealing and converting government property, to argue that the lack of a mens rea requirement in N.C. Gen. Stat. § 14-208.11 (2006), is unconstitutional. Morissette states, "there must be not only a wrongful act, but a criminal intention." Id. at 274, 96 L. Ed. at 306. We find it pertinent that 18 U. S. C. 641, under which the Defendant in Morissette was charged, contains a mens rea requirement and provides that "[w]hoever embezzles, steals, purloins, or knowingly converts" government property is punishable by fine and imprisonment. Id. at 248, 96 L. Ed. at 292.
Defendant's assertion that N.C. Gen. Stat. § 14-208.11, must constitutionally require "criminal intent" is contrary to our Court's holding in Young, which states that "although ignorance of the law is no excuse, and the statute at issue does not require the State to prove intent, due process requires that defendant have knowledge, actual or constructive, of the statutory requirements before he can be charged with its violation." Young, 140 N.C. App. at 12, 535 S.E.2d at 386 (emphasis added). Here, the evidence shows that Defendant had actual knowledge of the statutory requirements. On 13 March 2000, Defendant signed a document entitled, "Requirements for Sex Offender and Public Protection Registration," which stated that "[w]hen an offender required to register changes address, he/she must provide written notification of this address change to the Sheriff in the county where he/she has most currently registered. This notification must be sent to the Sheriff within 10 days of the address change." Moreover, the document stated that "I understand that failure to comply with one or more of these requirements may result in Class F Felony charges for violation of this Act." On 22 March 2001, Defendant provided the Buncombe County Sheriff's Office with notice of change of address. On 16 March 2006, Defendant verified his address in accordance with N.C. Gen. Stat. § 14-208.9A (2006), and 21 September 2004, Defendant notified the Buncombe County Sheriff's Office of his change of address. In light of Young, White, and Bryant, and considering the "necess[ity] to consider the specific factual context . . . involved" in each case, we conclude that Defendant had actual knowledge of the statutory requirements. In re Lamm, 116 N.C. App. at 385, 448 S.E.2d at 128. Because we conclude that Defendant had actual knowledge of the requirements of N.C. Gen. Stat. § 14-208.11, Defendant's due process rights under N.C. Gen. Stat. § 14-208.11 (1997), were not violated. The associated assignments of error are overruled.
No Error.
Judges BRYANT and JACKSON concur.
Report per Rule 30(e).