IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-893

Filed 5 November 2025

McDowell County, No. 22CR344506-580

STATE OF NORTH CAROLINA

v.

JOHNNIE DENISE HICKMAN, Defendant.

Appeal by defendant from judgment entered 12 February 2024 by Judge Reggie E. McKnight in McDowell County Superior Court. Heard in the Court of Appeals 13 August 2025.

*Michele Goldman, for defendant-appellant.*

*Attorney General Jeff N. Jackson, by Special Deputy Attorney General John R. Green, Jr., for the State.*

FLOOD, Judge.

Defendant Johnnie Denise Hickman appeals from the trial court's order, arguing the trial court erred by denying her motion to suppress, where a general administrative tax warrant did not grant the North Carolina Department of Revenue ("DOR") the authority to search her private property. Upon careful review, we conclude a search conducted solely pursuant to a general administrative tax warrant issued under N.C.G.S. § 105-242 violates the Fourth Amendment. We therefore reverse the trial court's order denying the motion to suppress and vacate the

judgment.

## I. <u>Factual and Procedural Background</u>

On 17 November 2022, the DOR issued a Warrant for Collection of Taxes (the "Tax Warrant") against Defendant for her failure to pay taxes on her prior possession of illegal drugs that she sold. The Tax Warrant was issued in McDowell County—where Defendant then lived—and provided, in relevant part, that pursuant to N.C.G.S. § 105-242, the McDowell County Sheriff's Office was "hereby ordered and commanded to levy upon and sell the real and personal property of the said taxpayer found within your county[.]" Two DOR agents (the "DOR Agents") met with Detective Matthew Smith of the McDowell County Sheriff's Office and went to Defendant's address.

Upon arriving at Defendant's address, the DOR Agents and Detective Smith noticed that both a house and a camper were located on the property. Defendant's mother, Jewel Robinette, informed the DOR agents and Detective Smith that she owned the house and camper, but that Defendant lived in the camper. Ms. Robinette then escorted the DOR Agents to the camper. Ms. Robinette knocked on Defendant's door; Defendant "came to the front door of the camper[,]" "closed the camper door behind her[,] and stepped outside." The DOR Agents then explained they had this Tax Warrant against Defendant, which "was a warrant for any property of value." The DOR Agents subsequently asked Defendant if she had anything of value and, noticing she was wearing a necklace, asked Defendant for the necklace, which she

gave them. The DOR Agents then asked if she "had any money," to which Defendant responded she "had some in [her] purse"; DOR Agents then "advised [her] to go get [the money]." Defendant testified that when she went inside to retrieve her purse, the DOR Agents were "pushing at my back to come in behind me."

According to Ms. Robinette, as the DOR Agents began searching Defendant's residence, Ms. Robinette told everyone "to leave" and to "[g]et out of [her] camper[,]" but "they wouldn't leave."

Detective Smith testified that, while the DOR Agents were searching the camper, he "stood at the front door of the camper." The DOR agents "ask[ed] [Defendant] to move to the kitchen area, and they opened up a cabinet," which revealed "a large Tupperware with a crystal-like substance" that Detective Smith could see from where he was standing at the front door. Detective Smith then asked Defendant to step outside; after Defendant complied, he detained her.

While he waited with Defendant, Detective Smith contacted Lieutenant Kirk Hensley, Lieutenant Chris Taylor, and Detective Paul Alkire for assistance. Upon arrival, Lieutenant Hensley asked Defendant to sign a "consent-to-search form" so the officers could "search the residence[,]" which Defendant signed. The officers joined the search of the residence with the DOR Agents, who had continued searching for things of value throughout this time. The officers subsequently seized what Lieutenant Taylor described as a "plastic container with a crystal-like substance believed to be methamphetamine, a glass dish, and . . . some digital scales."

Defendant was indicted on 5 September 2023 and charged with trafficking in methamphetamine by possession of 400 grams or more of a mixture containing methamphetamine. On 28 December 2023, Defendant filed a pre-trial motion to suppress the evidence, alleging the search was unconstitutional, as the DOR Agents "entered her home without a search warrant, and without consent, and refused to leave after being told to leave the home[.]"

On 12 February 2024, the trial court held a hearing on Defendant's motion, including hearing testimony from Detective Smith, Ms. Robinette, and Defendant regarding the events described above. After the hearing, the trial court entered an order denying Defendant's motion to suppress. In its order, the trial court found the Tax Warrant gave the "DOR Agents . . . the authority to collect and seize personal and real property belonging to [Defendant] and, inherently, to enter her residence in order to search for and collect her property for the purposes of sale[,]" and that they "had the authority . . . to search anywhere that items of value belonging to [] Defendant could be found, including inside drawers and cabinets." The trial court concluded the DOR Agents and Deputy Smith "had legal authority to enter [] Defendant's residence and search for items of value pursuant to the [Tax Warrant] and N.C.G.S. § 105-242."

After trial, on 14 February 2024, the jury found Defendant guilty, and the trial court sentenced Defendant to 175 to 227 months' confinement. Defendant gave an oral notice of appeal, and subsequently filed a petition for writ of certiorari ("PWC").

## II. <u>Jurisdiction</u>

This Court has jurisdiction to hear an appeal from a final judgment of a superior court, pursuant to N.C.G.S. §§ 7A-27(b)(1) and 15A-1444(a) (2023). Defendant, in a precautionary manner, filed a PWC. Orally, defense counsel appealed "*on* the motion to suppress," which may have "injected some ambiguity in his notice of appeal as to whether [Defendant] was appealing from the judgment or from the order denying the motion to suppress." We, however, do not find this ambiguous, such that, taken in context, it was clear Defendant was appealing from the judgment and the denial of the motion to suppress. We therefore deny Defendant's conditional PWC and proceed to a review of the merits.

## III. <u>Standard of Review</u>

This Court reviews a trial court's denial of a motion to suppress to determine "whether competent evidence supports the trial court's findings of fact and whether the findings of fact support the conclusions of law." *State v. Biber,* 365 N.C. 162, 167–68 (2011) (citation omitted). "Conclusions of law are reviewed de novo and are subject to full review." *Id.* at 168 (cleaned up). "Likewise, the standard of review for questions concerning constitutional rights is de novo." *State v. Hales*, 282 N.C. App. 178, 183 (2022) (citation omitted). "Under a *de novo* review, th[is C]ourt considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *Biber*, 365 N.C. at 168 (citation and internal quotations omitted).

## IV. <u>Analysis</u>

On appeal, Defendant argues the trial court erred "when it held that the [Tax Warrant] gave [DOR Agents] 'inherent' authority to enter [Defendant]'s residence to search for property to satisfy her tax obligations." Specifically, Defendant contends that "[b]ecause the DOR agents entered [Defendant's] property without a search warrant, consent, or any recognized exception to the warrant requirement, their search was unlawful." The State counters that the entry by the DOR agents was proper under the authority of the Tax Warrant. We agree with Defendant.

## A. Fourth Amendment Protections

The Fourth Amendment of the United States Constitution, made applicable to the states through the Due Process Clause of the Fourteenth Amendment, "protect[s] private citizens against unreasonable searches and seizures." *State v. Johnson*, 378 N.C. 236, 244 (2021); U.S. Const. amend. IV. "Article I, Section 20 of the Constitution of North Carolina likewise prohibits unreasonable searches and seizures and requires that warrants be issued on probable cause, although the language of the North Carolina Constitution differs from that of the United States Constitution." *State v. Allman*, 369 N.C. 292, 293 (2016); *see also* N.C. Const. art. 1, § 20.

The United States Supreme Court has held that "the [Fourth] Amendment's protection applies in the civil context as well" as in the criminal context. *Soldal v. Cook Cnty., Ill.*, 506 U.S. 56, 67 (1992). "[T]he reason why an officer might enter a house or effectuate a seizure is wholly irrelevant to the threshold question whether the [Fourth] Amendment applies." *Id.* at 69. "As we have observed on more than one

occasion, it would be 'anomalous to say that the individual and his private property are fully protected by the Fourth Amendment only when the individual is suspected of criminal behavior.'" *Id.* at 69 (citing *Camara v. Mun. Ct. of City & Cnty. of San Francisco*, 387 U.S. 523, 530 (1967)).

## B. Levy Power

The United States Supreme Court has held "the existence of the levy power is an essential part of our self-assessment tax system and [] it enhances voluntary compliance in the collection of taxes that this Court has described as 'the lifeblood of government, and their prompt and certain availability an imperious need.'" *G.M. Leasing Corp. v. U.S.*, 429 U.S. 338, 350 (1977) (citing *Bull v. U.S.*, 295 U.S. 247, 259 (1935)).

North Carolina law provides for a tax on certain narcotics:

> Notwithstanding any other provision of law, an assessment against a dealer who possesses an unauthorized substance to which a stamp has not been affixed as required by this Article shall be made as provided in this section. The Secretary [of Revenue] shall assess a tax, applicable penalties, and interest based on personal knowledge or information available to the Secretary [of Revenue]. . . . If the dealer does not pay the tax, penalty, and interest immediately upon receipt of the notice and demand, the Secretary [of Revenue] shall collect the tax, penalty, and interest pursuant to the jeopardy collection procedures in [N.C.]G.S. [§] 105-241.23 [(2023)] or the general collection procedures in [N.C.]G.S. [§] 105-242 [(2023)], including causing execution to be issued immediately against the personal property of the dealer, unless the dealer files with the Secretary [of Revenue] a bond in the amount of the asserted liability for the tax, penalty, and interest. The

> Secretary [of Revenue] shall use all means available to collect the tax, penalty, and interest from any property in which the dealer has a legal, equitable, or beneficial interest.

N.C.G.S. § 105-113.111 (2023). A "dealer" is defined, in relevant part, as "[a] person who actually or constructively possesses more than 42.5 grams of marijuana, seven or more grams of any other controlled substance that is sold by weight, or 10 or more dosage units of any other controlled substance that is not sold by weight." N.C.G.S. § 105-113.106(3) (2023).

If a dealer "does not pay a tax within 30 days after it is collectible . . . the Secretary [of Revenue] may take either of the following actions to collect the tax:"

> (1) Issue a warrant directing the sheriff of any county of the State to levy upon and sell the real and personal property of the taxpayer found within the county for the payment of the tax and the cost of executing the warrant and to return to the Secretary [of Revenue] the money collected, within a time to be specified in the warrant but not less than 60 days from the date of the warrant. The procedure for executions issued against property upon judgments of a court apply to executions under a warrant.
>
> (2) Issue a warrant to any revenue officer or other employee of the [DOR] charged with the duty to collect taxes, commanding the officer or employee to levy upon and sell the taxpayer's personal property found within the State for the payment of the tax. Except as otherwise provided in this subdivision, the levy upon and sale of personal property by an officer or employee of the Department is subject to and must be conducted in accordance with the laws governing the sale of property levied upon under execution.

N.C.G.S. § 105-242(a) (2023).

- 8 -

Our statutes further provide that if the Department of Revenue determines there is an urgency for the collection of taxes, it may issue a jeopardy tax warrant that allows for the "immediate assessment and collection of the taxes[.]" *See* N.C.G.S. § 105-241.23(a) (2023) ("The Secretary may . . . immediately assess and collect any tax the Secretary finds is due from a taxpayer if the Secretary determines that collection of the tax is in jeopardy and immediate assessment and collection are necessary in order to protect the interest of the State. In making a jeopardy collection, the Secretary . . . is not required to wait any period of time . . . .").

Here, the Secretary issued the Tax Warrant against Defendant pursuant to the general tax warrant collection procedures set out in N.C.G.S. § 105-242, rather than pursuant to a jeopardy tax warrant. The purpose behind the general tax warrant is to "collect a tax" without the urgency. *See* N.C.G.S. § 105-241.24.

## C. *G.M. Leasing*

Defendant argues that, under *G.M. Leasing,* a search warrant adhering to the Fourth Amendment is required before entering a person's private property to search, as entry is improper based solely pursuant to a general tax warrant issued under N.C.G.S. § 105-242 (2023). *See G.M. Leasing*, 429 U.S. at 358.

In *G.M. Leasing*, the petitioner was assessed to owe income taxes in the amounts of $406,099.34 and $545,310.59 for the years 1970 and 1971, respectively. *Id.* at 342. Officers of the Internal Revenue Service ("IRS"), with the help of a locksmith and acting without a warrant, searched the petitioner's cottage and seized

books and records, which the respondents "hoped to examine . . . to see if they contained stock certificates or information concerning the location of other assets." *Id.* at 346. On appeal, the United States Supreme Court analyzed whether the "intrusion into the privacy of [the] petitioner's" cottage to seize petitioner's books and records was "justified on the ground that [the] petitioner's assets were seizable to satisfy tax assessments." *Id.* at 352–54. The IRS argued "that there is a broad exception to the Fourth Amendment that allows warrantless intrusions into privacy in the furtherance of enforcement of the tax laws." *Id.* at 354. The Court, however, disagreed.

In recognizing both the enunciated "Power to lay and collect Taxes" of the Federal Government within the United States Constitution, *see* Const., Art. I, § 8, cl. 1, and "that the First Congress . . . provided that certain taxes could be 'levied by distress and sale of goods of the person or persons refusing or neglecting to pay[,]'" *see* Act of Mar. 3, 1791, c. 15, § 23, 1 Stat. 204, the Court explained that this power to collect taxes "relates to warrantless *seizures* rather than to warrantless *searches*." *Id.* at 354 (emphasis added). *G.M. Leasing* also drew a clear line between seizures from areas protected by the Fourth Amendment, such as homes, and seizures from public areas, such as streets. In *G.M. Leasing*, the Supreme Court carefully distinguished between the agents' seizure of some of the petitioner's automobiles from public parking areas and the agents' warrantless search of the cottage. The Court explained:

It is one thing to seize without a warrant property resting

in an open area or seizable by levy without an intrusion into privacy, and it is quite another thing to effect a warrantless seizure of property . . . situated on private premises *to which access is not otherwise available for the seizing officer.*

Indeed, one of the primary evils intended to be eliminated by the Fourth Amendment was the massive intrusion on privacy undertaken in the collection of taxes pursuant to general warrants and writs of assistance.

*Id.* at 354–55 (emphasis added).

The Court then addressed the applicable federal tax statute, which "authorize[d] 'distraint and seizure by any means.'" *Id.* at 356 (referencing 26 U.S.C. § 6331(b)). The Court explained, "[r]ead narrowly, [the statute] authorizes the use of every means to deprive the taxpayer of use, enjoyment, or title to property (*e.g.*, transferring title, asportation, immobilization)[,]" but that the statute "does not refer to warrantless intrusions into privacy." *Id.* at 356–57. Although the IRS argued for a warrantless intrusion into privacy for the sake of tax collection, the Court was "unwilling to hold that the mere interest in the collection of taxes is sufficient to justify a statute declaring per se exempt from the warrant requirement every intrusion into privacy made in furtherance of any tax seizure." *Id.* at 357–58. Instead, the Court held that "[t]he intrusion into [the] petitioner's [cottage] is [] governed by the normal Fourth Amendment rule that except in certain carefully defined classes of cases, a search of private property without proper consent is unreasonable unless it has been authorized by a valid search warrant[,]" and concluded the warrantless

search of the petitioner's books and records to satisfy tax assessments was in violation of the Fourth Amendment. *Id.* at 358–59 (citation modified). Thus, *G.M. Leasing* established that searches for purposes of tax collection must be authorized by a search warrant if consent is not given. *See id.* at 357–58; *see also Sachs v. U.S. ex rel. I.R.S.*, 59 F. App'x 116, 119 (6th Cir. 2003) (explaining that "*G.M. Leasing* recognizes a Fourth Amendment violation based on the privacy concerns that accompany a *physical intrusion*" (emphasis added)); *Miri v. Clinton*, No. 11-15248, 2014 WL 3752468, at *3 (E.D. Mich. July 30, 2014) (holding that a search warrant was required for a tax collection under *G.M. Leasing*, due to the Court's holding that "a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid *search warrant*") (citation omitted) (emphasis added)); *In re Stoltz*, 745 F. Supp. 643, 646 (D. Colo. 1990) ("[A] warrant is required before the government may search a taxpayer's premises for seizable assets[.]").

Here, as in *G.M. Leasing*, there was a "massive intrusion on privacy" through the search of the taxpayer's private residence "to which access is not otherwise available for the seizing officer." 429 U.S. at 354–55. Unlike in *G.M. Leasing*, where the tax statute explicitly provided agents authority to "distrain[] and seiz[e] by any means[,]" *see* 429 U.S. at 356, the statute here, N.C.G.S. § 105-242, provides the authority only "to levy upon and sell," *see* N.C.G.S. § 105-242 (failing to include the term "search"). Both statutes, however, "do[] not refer to warrantless intrusions into privacy[,]" meaning that a search warrant is required. *Id.* at 356; *see also* N.C.G.S. §

105-242. As the Court stated in *G.M. Leasing*, "one of the primary evils intended to be eliminated by the Fourth Amendment was the massive intrusion on privacy undertaken in the collection of taxes pursuant to general warrants[.]" 429 U.S. at 355.

The State asserts this Court should uphold the lower court's decision because N.C.G.S. § 105-242 "has never been ruled unconstitutional." In considering the State's assertion, however, we do not hold N.C.G.S. § 105-242 unconstitutional, but rather hold that the statute authorizes only the action "to levy and sell."

Notwithstanding the clear Fourth Amendment mandate set forth in *G.M. Leasing*, the State further argues the search here was not "warrantless," and it was reasonable pursuant to the Tax Warrant, in and of itself. Specifically, the State reasons that "collecting taxes is an important government interest[,]" and argues that "[a]lthough not issued by a magistrate or judge, the [T]ax [W]arrant here certainly met the objective reasonableness standard of the Fourth Amendment given all the processes offered by our statutes."

While "[o]ur cases have consistently recognized [] the government's interest in collecting its revenues[,]" *see Town of Hudson v. Martin-Kahill Ford Lincoln Mercury, Inc.*, 54 N.C. App. 272, 274 (1981), we discern nothing in our statutes or precedential caselaw that indicates the State's interest in collecting taxes outweighs the Fourth Amendment's search warrant requirement before searching one's private property. Under *G.M. Leasing*, our Supreme Court explained that it is "unwilling to hold that

the mere interest in the collection of taxes is sufficient to justify a statute declaring per se exempt from the warrant requirement every intrusion into privacy made in furtherance of any tax seizure[,]" and instead, "a search of private property without proper consent is unreasonable unless it has been authorized by a valid *search* warrant." 429 U.S. at 357–58 (emphasis added) (citation and internal quotations omitted). Additionally, our Supreme Court has held that "[s]earches conducted by governmental officials in the absence of a judicial warrant are presumptively unreasonable." *State v. Julius*, 385 N.C. 331, 336 (2023) (citation omitted).

Extending from the State's flawed argument that the search based on the Tax Warrant was reasonable is the State's assertion that "those involved here acted under the objectively reasonable, good faith belief that the tax warrant was valid." Accordingly, the State argues the exclusionary rule should not apply under a good faith exception or the plain view exception even if this Court rules the Tax Warrant's application in this circumstance violated the Fourth Amendment.

The exclusionary rule was created as "a deterrent sanction that bars the prosecution from introducing evidence obtained by way of a Fourth Amendment violation." *Davis v. U.S.*, 564 U.S. 229, 231–32 (2011). When, however, the State does not present exclusionary rule arguments before the trial court but has the opportunity to do so at a suppression hearing, those arguments are deemed waived on appeal. *See State v. Romano*, 369 N.C. 678, 693 (2017) ("The State also argues that . . . the good faith exception and the inevitable discovery and independent source

exceptions to the exclusionary rule are applicable in this case. A review of the record reveals that the State did not advance these arguments at the suppression hearing; accordingly, the issues are waived and are not properly before this Court."); *see also* N.C. R. App. P. 10. Thus, because the State did not present before the trial court any arguments regarding good faith, this argument is waived, and we do not address the issue of the good faith exception under North Carolina law.[1]

Here, the State's sole argument before the trial court as to the exclusionary rule was the plain view exception.[2] The plain view doctrine provides an exception to the warrant requirement for the *seizure* of property, but it does not provide an exception for a *search. See State v. Alexander*, 233 N.C. App. 50, 55 (2014) ("We therefore hold, as an initial matter, that the trial court erred in applying the plain view doctrine to the question whether [the officer] performed a lawful search when she observed the contents of the trailer from the front porch of the mobile home. The plain view doctrine applied only to the question whether [the officer's] warrantless seizure of the copper coils was permissible under the plain view doctrine."); *Texas v. Brown*, 460 U.S. 730, 738 (1983) ("'[P]lain view' provides grounds for seizure of an

---

[1] The North Carolina Supreme Court recently held and clarified in *State v. Rogers*, No. 377PA22, 2025 WL 2942785 (N.C. Oct. 17, 2025), that there is a good faith exception in North Carolina, thus overturning *State v. Carter*, 322 N.C. 709 (1988), which had previously held there was no good faith exception under our state constitution. Our decision here does not hinge on this change of law.

[2] In the suppression hearing, the State referenced consent, not as an exception to the exclusionary rule, but only to explain that Defendant signed a consent to search form after she was detained by the officer.

item when an officer's access to an object has some prior justification under the Fourth Amendment. 'Plain view' is perhaps better understood, therefore, not as an independent 'exception' to the Warrant Clause, but simply as an extension of whatever the prior justification for an officer's 'access to an object' may be." (citation omitted)).

Here, because we have concluded a general tax warrant—alone—does not provide justification to search one's private residence, there was no prior justification under the Fourth Amendment; accordingly, there was no extension of that justification, and the plain view doctrine exception does not apply. *See Brown*, 460 U.S. at 738. Exclusionary rule exceptions advanced by the State other than plain view are deemed waived on appeal. *See Romano*, 369 N.C. at 693; N.C. R. App. P. 10 ("In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context.").

We acknowledge the State's expressed policy concerns as to allowing a person's drug possession conviction to be overturned; however, a graver concern would be to allow the shifting winds of policy to alter the course of firmly established law. *See State v. Ballance*, 229 N.C. 764, 767 (1949) ("[T]he law must be characterized by stability if men are to resort to it for rules of conduct. These considerations have brought forth the salutary doctrine of stare decisis which proclaims, in effect, that

where a principle of law has become settled by a series of decisions, it is binding on the courts and should be followed in similar case." (citation omitted)); *Harper v. Hall*, 384 N.C. 292, 322–23 (2023) ("The General Assembly is the 'policy-making agency' because it is a far more appropriate forum than the courts for implementing policy-based changes to our laws[.]" (citation omitted)).

Despite the State's arguments asking that we circumvent clearly established Fourth Amendment jurisprudence set by the United States Supreme Court, we decline to contravene foundational constitutional principles. *See State v. McDowell*, 310 N.C. 61, 74 (1984) (holding that state courts should treat "decisions of the United States Supreme Court as binding"). Here, *G.M. Leasing* instructs that "a search of private property[, even for tax collection purposes,] without proper consent is unreasonable unless it has been authorized by a valid search warrant." 429 U.S. at 358 (citation omitted). The Tax Warrant here authorized the government agents "to levy upon and sell the real and personal property of the said taxpayer[,]" but did not convey the power to search one's private residence. Therefore, we hold the application of N.C.G.S. § 105-242, in this circumstance—to intrude into a person's private residence and to conduct a search pursuant to a tax warrant, without a valid search warrant—violates the Fourth Amendment. *See id.* at 357. In so holding, we recognize our state constitution's protection of its citizens from "[g]eneral warrants[,]" which "are dangerous to liberty and shall not be granted." N.C. Const. art. 1, § 20; *see also State v. Carter*, 322 N.C. 709, 724 (1988) ("It must be remembered that it is not only

the rights of this criminal defendant that are at issue, but the rights of all persons under our state constitution."). Our holding is limited to general tax warrants under N.C.G.S. § 105-242; under our de novo review, we reverse the order denying Defendant's motion to suppress and vacate the judgment. *See State v. Cabbagestalk*, 266 N.C. App. 106, 115 (2019) (reversing the trial court's denial of the defendant's motion to suppress and vacating the judgment that was based exclusively on the evidence that had come in subject to the motion to suppress).

## V. **Conclusion**

Upon careful review, we conclude a search conducted solely pursuant to a general administrative tax warrant, issued under N.C.G.S. § 105-242, violates the Fourth Amendment where there is no valid search warrant obtained. We therefore reverse the order denying Defendant's motion to suppress and vacate the judgment.

REVERSED AND VACATED.

Judges STROUD and FREEMAN concur.